## Wright *v.* Caffey

No. 41558       October 24, 1960     123 So. 2d 841

*Frank O. Wynne, Jr.,* Cleveland, for appellant.

*Maynard, Fitzgerald & Maynard,* Clarksdale, for appellee.

LEE, J.

Mrs. Bettye Wright sued Mr. and Mrs. Ray Caffey to recover damages for personal injuries and hospital bills on account of an injury which she sustained, allegedly, as a result of the negligence of the defendants. The allegations of her declaration were to the following effect:

Mrs. Wright, 80 years of age, the mother of Mrs. Caffey, lived in Cascilla, Mississippi. The Caffeys lived in Rosedale. On May 4, 1959, Mrs. Caffey invited her mother to visit her. Upon the mother's acceptance, Mrs. Caffey, in her car, brought her to Rosedale. The room in which the visitor was to stay was located on the southwest corner of the house. Access into and from the room was through the kitchen. It was Mrs. Wright's practice to remain in bed in the morning until 8:30 or 9:00 o'clock. To conform to this practice, Mrs. Caffey told her mother to remain in bed each morning and she would prepare breakfast and bring it to her. This course was followed for several days. At length Mrs. Wright became ill, and, on the advice of a doctor, she was confined to her bed. During this time, Mrs. Caffey prepared meals and served them to her mother in bed. Mrs. Caffey operated a beauty shop in the east side of the house, and had an early engagement with two of her customers on the morning of May 23, 1959. For that reason, she could not prepare breakfast for her family that day. She rose early and went to town to buy food for the day's dinner. On her return, she prepared dinner, placed it in the oven to cook, and went immediately to fulfill her engagements in the beauty parlor. Mrs. Caffey, the night before, for the purpose of feeding her son's dog, placed on the floor two bowls, one containing food and the other water. Mrs. Wright, after waiting some time for her breakfast, wanting to be helpful and

not to disturb her daughter, arose and went to the kitchen to prepare her breakfast. As she was doing this, she stepped into the bowl of dog food, lost her balance, and fell with great violence. As a result, she averred that she was seriously and permanently injured, and was required to incur large hospital and medical bills.

The defendants answered in detail and denied that they were guilty of negligence. By demurrers therein, they also set up that the declaration did not in law state a cause of action.

Before the hearing, the plaintiff took a voluntary dismissal as to defendant, Ray Caffey. On the hearing of the demurrer of Mrs. Caffey, the same was sustained. When Mrs. Wright declined to plead further, the cause was finally dismissed; and she has appealed here.

The appellant contends that the trial court erred in sustaining the demurrer for the following reasons: (1) She went upon the premises as an invitee of the appellee. (2) If the court takes the position that she was a social guest and a bare licensee, still, when she became ill and the appellant undertook the duty of caring for her during her illness, then her status changed and she became an invitee of the appellee. And (3) If her status did not change to that of an invitee, the appellee was guilty of affirmative negligence in placing the bowl of dog food on the floor of the kitchen, knowing that the appellant, in order to leave her room, would go through the kitchen, and, in all probability, would not discover the hazardous condition for herself, due to her age and physical condition.

On the other hand, the appellee contends that the demurrer was properly sustained because: (1) Her duty to the appellant was that of a licensee only. (2) Such duty was to refrain from willfully or wantonly injuring her. And (3) she was in fact guilty of no negligence.

The appellant, in her contention that she was an invitee, cites Patterson v. Sayers, 223 Miss. 444, 78 So. 2d 467. In that case, Mrs. Patterson, an employee

of Mississippi Automobile Club, called Sayers about his renewal membership in the club which had not been paid, and he told her to come to see him that afternoon at his office in the lobby of the Concord Hotel. He therefore knew that the business about which she wished to see him was their mutual interest in that membership. The opinion, in holding that Mrs. Patterson was an invitee, cited Nowell v. Harris, (Miss.) 68 So. 2d 464 as follows: "An invitee is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupaant on the business of the owner or occupant or for their mutual advantage."

See also 65 C. J. S., Negligence, Sec. 32a, p. 483, where it is said, generally speaking a "licensee is on the premises by permission or sufferance only, and not by virtue of any business or contractual relation with the owner or occupant inuring to the mutual benefit of both."

There is no sound basis on which it can be said that Mrs. Wright, on this visit to her daughter's home, was on the business of Mrs. Caffey, or for their mutual advantage.

Appellant also cites Laube v. Stevenson, 137 Conn. 469, 78 A. 2d 693, 25 A. L. R. 2d 592. In that case Mrs. Laube made occasional visits to the home of her daughter, Mrs. Stevenson, at which time she assisted with the household duties and the care of the baby. She had never used the stairs but once, and that was about a year and a half before. Actually the stairs had been in a defective and dangerous condition for all of that time, and the defendant knew about it. Mrs. Stevenson requested her mother to get a blanket from the cellar, but did not warn her of the dangerous stairs. The opinion, in pointing out that the phrase "gratuitous licensee" includes "social guests who, in a sense, are persons temporarily adopted into the possessor's family," held that the daughter, under the circumstances, was under a duty to warn her mother of the danger.

But in 65 C. J. S., Negligence, Sec. 32e, p. 489, it is said that "One who comes on premises as a guest of the owner or occupant, or to receive a gratuitous favor, is usually regarded as a licensee." In Sec. 35a, pp. 491-2 thereof, it is said that "As a general rule, the owner or occupant of premises owes no affirmative duty of care with respect to a mere licensee on the premises, or, as usually stated, owes no duty to the licensee, except to refrain from willfully or wantonly injuring him; and, accordingly, a mere licensee generally has no cause of action because of an injury received through the negligence of the owner or occupant of the premises to which the license extends. * * *

"The most usual statement of the general rule is that no duty exists toward a mere licensee except to refrain from willfully or wantonly injuring him, or as otherwise stated, to refrain from injuring the licensee through such gross negligence as is equivalent to willfulness or wantonness, or to abstain from the doing of any intentional, willful, or wanton acts or misconduct, endangering the safety of the licensee." In Sec. 35d thereof, pp. 495-496, it is said: "A social guest on the host's premises or in his home must take the premises as he finds them, with no greater right than a mere licensee with respect to the hosts's liability for injuries to the guest."

See likewise 38 Am. Jur., Negligence, Sec. 117, p. 778, where the text, in dealing with the relation between host and guest, says: "Although there is not a great deal of authority upon the point, the rule appears to be that the relation between host and guest is not that of invitor and invitee, but that of licensor and licensee, and that, in accord with the general principle which determines liability of an owner or occupant of premises to one who comes thereon as a mere licensee, the host is not liable for. an injury sustained by the guest from some defect in the condition of the premises, except as the licensee is needlessly exposed to peril through the failure of the owner or occupant to warn him of danger,

or by the active negligence of the owner or occupant. * * *
*The guest assumes the ordinary risks which attach to
the premises. No exception is made to the rule because
of the fact that the guest enters on the host's express
invitation to enjoy his hospitality.* It is said that the
owner or occupant must have a beneficial interest in
a visit in order to impose upon him the duty of using
reasonable care in having the premises in a safe condi-
tion for the visitor, and that the intangible advantages
which arise from mere social contacts do not comprise
such an interest. A better reason for the rule is that a
host merely offers his premises for enjoyment by his
guests with the same security that the host and the mem-
bers of his family who reside with him have." (Em-
phasis supplied.)

In Roberts v. Mississippi Power and Light Company,
193 Miss. 627, 10 So. 2d 542, the sixth syllabus says:
"An owner of land owes no duty to trespassers or lic-
ensees except to refrain from willful or wanton injury."

In 25 A. L. R. 2d, commencing at p. 598, there is an
annotation on the proposition of liability for injury to
a guest in the home or similar premises. The annota-
tion points out that the results of the cases "display a
commendable unanimity in holding that a social guest
injured by a defect in the premises may not recover
against his host in the absence of evidence establishing
something more than ordinary negligence in the main-
tenance of the premises." The guest is permitted to
recover only where his injury is the result of active and
affirmative negligence of the host. In other words, "the
host should treat the guest as a member of the family,
and the guest, on the other hand, should accept the con-
ditions ordinarily prevalent in his host's home without
cavil or complaint." Ibid.

In Sanders v. Brown, 238 P. 2d 941, an Arizona case,
it was held that the host was not liable for the guest's
falling over a pile of gravel in the driveway when he
had already traveled the driveway four times. McHenry

v. Howells, 201 Oregon 697, 272 P. 2d 210, follows the general rule as heretofore stated.

In Wolfson v. Chelist, 284 S. W. 2d 447, a Missouri case, Belle Wolfson was visiting in the home of her sister, Bernice Chelist, as a social guest. As she walked out through a rear or side door, she stepped on fragments of meat or grease which remained on the concrete porch floor after the cat had been fed there the night before. She fell to the floor and was injured, and recovered a verdict and judgment for $2,000. In reversing this judgment, the opinion said:

"Of course a social guest is an invitee to a host's home in the sense that he has been asked to share for a time the hospitality of the home and so become in a way quite as a member of the host's family for a while, that is, he is an invitee in the ordinary social sense. The word 'invitation' here has been a source of difficulty because of an apparent incongruity in terminology inasmuch as the 'invited' social guest is held to be not an invitee but a licensee. We have here an invitee who is not an invitee. The incongruity, only apparent, disappears, however, when it is understood it has been thought there must be something more than the mere fact of an invitation to give the entrant upon another's property the status of an invitee in a legal sense. Having an invitation, we are concerned with what kind of an invitation it is. What are its terms? To what place are we invited? For what purpose are we asked to come there? In our case the invitation was a social one. The guest was invited to a private home. The invitation was not tendered with any material benefit motive. In such a case it would seem a guest should not expect that precautions have been taken for his safety that should be taken by the inviter-proprietor of a store to protect the invitee-customer from harm. The invitation was not extended to the public generally or to some undefined portion of the public from which invitation, in the shown circumstances of a case, entrants might reasonably ex-

pect precautions have been taken, in the exercise of ordinary care, to protect them from danger. The courts have reasoned that when the social guest visits his host's home, he should understand that he is to be placed on the same footing as one of the family, and must take the premises as the occupier uses them, without any precautions for his safety.''

■■ Obviously the appellee did not willfully or wantonly injure her mother. All that she did, which contributed in any way to the injury, was the feeding of the dog in the kitchen, and the failure for several hours to remove the bowl. The feeding of cats and dogs is one of the chores which is performed by many hosts and hostesses daily. It cannot be said, as a legal conclusion, that the daughter in fact set a trap for her mother. She had this early engagement. She went to town and purchased the essentials for dinner. She even put them in the oven to be cooked. It was not alleged either that the appellant could not see, or that the bowl was not obvious to her.

The status of the appellant here was more nearly that of a ''gratuitous licensee'' as defined in Laube v. Stevenson, supra. The factual differences in that case and the present one are poles apart. Mrs. Stevenson knew that the condition of the stairs, in that case, had existed in a dangerous condition for about a year and a half. Yet she sent her mother, without warning, to the cellar on the stated errand. Clearly there was active or affirmative negligence in that case.

But, in the present case, it is obvious that the bowls were inadvertently left on the floor after the dog was fed. This was neither active nor affirmative negligence. If it could be denominated as a negligent act at all, it would amount to mere simple negligence. Under the authorities heretofore cited, the declaration failed to state a cause of action, and the demurrer was properly sustained.

Affirmed.

*Hall, P. J.,* and *Kyle, Holmes* and *McElroy, JJ.,* concur.