577 So.2d 372 (1991)
David MAY and Donna L. May
v.
V.F.W. POST # 2539.
No. 89-CA-0895.
Supreme Court of Mississippi.
March 6, 1991.
Rufus H. Alldredge, Jr., Franke Rainey & Salloum Firm, Gulfport, for appellant.
L. Christopher Breard, Bryant Colingo Williams & Clark, Gulfport, for appellee.
Before HAWKINS, P.J., and ROBERTSON and BANKS, JJ.
BANKS, Justice, for the Court:

INTRODUCTION
David and Donna May appeal to this Court from an adverse summary judgment on their claim against one of two defendants. The court below properly granted summary judgment. We affirm on the merits without hesitation.
On November 2, 1984, David May and his wife Donna filed a complaint in the Harrison County Circuit Court against Ricky Triplett (Triplett) and VFW Post # 2539 (VFW). They alleged that they were business invitees attending a VFW-sponsored dance on September 1, 1984, when without warning or provocation, Triplett attacked David resulting in severe injuries to David. They further alleged that at the time of this incident, Triplett was an employee of the VFW, acting within the course and scope of his employment. Therefore, according to the Mays, VFW was negligent in the following respects:
A. failing to exercise reasonable care for the safety of patrons on its premises;

*373 B. failing to provide adequate security for the protection of its patrons;
C. failing to prevent ... Triplett from attacking [May] when ... VFW knew, or in exercise of reasonable care, should have known, of the violent propensities of Triplett; and
D. failing to provide adequate supervision of its security personnel.
In their separate answers, VFW denied all allegations while Triplett denied some and admitted others. Affirmatively Triplett asserted that David was the culprit who attacked him without provocation or warning. In the following weeks the VFW propounded a set of interrogatories. After David May submitted his answers, VFW filed, on April 24, 1985, a Motion to Dismiss or Alternatively for Summary Judgment. Attached to this Motion was the affidavit of Clifford Horn, the Post Commander for the VFW. Horn asserted that Triplett was employed as a janitor during this time period. On the night in question, however, he was "not on duty and had no responsibility whatsoever to the VFW ... other than that expected of the general public." Moreover, the dance held on that night was not "organized, promoted, or encouraged in any way by the VFW ... but rather, the main hall area was donated to the organizers of the `benefit' for the stated purpose of underwriting certain medical expenses of a family member of the host and member of the community." The VFW received no revenue from the event other than incidental sales for drinks and ice to those attending the benefit according to Horn. Horn also denied that Triplett was a security guard.
The trial court denied VFW's motion for Summary Judgment on July 10, 1985, and discovery continued.
After completion of discovery, VFW filed its renewed motion for summary judgment on March 28, 1988; a hearing was held on this motion on April 4, 1989; and on June 7, 1989, the trial judge submitted his findings of fact and granted the summary judgment motion. An amended final order was entered on June 26, 1989, and, thereupon, the Mays filed their notice of appeal to this Court.

Facts
The facts revealed through discovery dictated the trial court's conclusion. On Labor Day, September 1, 1984, David and Donna May attended a "charitable benefit dance" at the VFW. The VFW had donated the hall to the organizers of the event for the purpose of raising money for a member of the community. The VFW neither sponsored nor organized the charitable event in any manner. Moreover, it did not have any control over the function except that a $50 deposit would not be returned to the organizers if they failed to clean-up the hall after the event. The sponsor, Dorothy Alexander, was responsible for the advertisement of the event, the entertainment and the security. During the event the VFW sold alcoholic and non-alcoholic beverages and ice to those attending.
Near the end of the dance an altercation occurred between David May and Triplett. At the time of this altercation, Triplett was not on duty and had no responsibilities that night. He was not scheduled to clean up after this function because the sponsors were to clean up. According to Triplett, even when he was scheduled to clean up after a function, he would clean up early the following morning but never immediately following the function. In another portion of his deposition, however, Triplett did state that: "I'd clean up [the VFW] at night, like when the bar closed at ten, I clean up, and then I'd go home... ." Aside from any inference to be drawn from this statement, there was no dispute that on the night in question, he was present only as a customer.
Triplett testified that he went to the VFW sometime after 11:30 p.m. He did not pay the admission fee to the dance, but he went into the bar, which is open to the public. "You don't have to pay to go into the bar." While in the bar, Triplett shot a game of pool and he "may have drank [sic] two beers or three beers." Jerry Weaver was the bartender/manager that night. According to Weaver, while Triplett was at the bar, he did not appear to be intoxicated. In the time that Weaver worked there, the *374 fight between Triplett and May was the first that occurred at the VFW. Moreover, according to Horn, no one at VFW had any difficulty with Triplett following instructions or was aware of Triplett having been in previous fights at the VFW or elsewhere.
Prior to the altercation at the VFW, May and Triplett had been in a fracas some seven years previously. The parties' versions of that incident, like the one in the case sub judice, differed. Since that first encounter, Triplett and May had seen each other and even waved to each other and said "hello." According to Triplett, he had never really been in a fight before. He argued with another student in high school. Between the time he quit high school around 1975, and the time of this incident, he had one fight with his brother at home. He has never been involved in another fight or in any problems at a VFW. This testimony was undisputed.
On the night of the incident, May and Triplett were in their mid-twenties. The hostility between the two resurfaced at the affair at the VFW. Who assaulted whom first is in dispute. What is not in dispute is that their differences had nothing to do with any of Triplett's duties with the VFW.
May, when asked in his deposition what the VFW could have done to protect him that night, said, "I don't know." He continued, "You might've [sic] had more security guards there because it was a pretty big crowd for one man." According to Weaver, however, there were two security persons, who were also deputy sheriffs. One was in uniform and the other was in plain clothes. At least one of these guards was involved in breaking up the fight.
Upon this evidence and after the hearing on the summary judgment motion, the trial court made the following findings:
The moving force which caused the injury to Plaintiff was not a defect in the premises as such but was the independent act of another patron (Triplett). This is not to imply that a dangerous condition cannot consist of the unruly acts of an individual under specific circumstances, but there must be more to establish the knowledge of the owner than pure surmise speculation and conjecture. In this case, there is no evidence to support the argument that Triplett had known propensities to act in such a manner, as he apparently acted unprovoked. To hold a premises owner liable under these circumstances would be unconscionable and would establish the owner an insurer of the safety of all invitees, which is not the law of this State.
It was argued that Triplett's status as a part-time employee created liability, yet there is no support that he was within the scope of this employment or acting as an agent or representative of the VFW.
Therefore, based upon the spontaneous act of Triplett, the status enjoyed by David and Donna May in relationship to the VFW, and the VFW's lack of knowledge of any erratic propensities of Triplett, the inevitable conclusion is that there is no basis for establishing a causal relationship between the injury to the Plaintiff and the VFW... .

ISSUES

1. Jurisdiction
This Court is duty bound to take cognizance of its own jurisdiction or lack thereof. Although David and Donna May filed a claim against both VFW and Triplett, this appeal arose subsequent to the trial court's entry of summary judgment in favor of only one of the defendants, VFW. Accordingly, this appeal is governed by Miss.R. Civ.P. 54(b) which states:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment.
Miss.R.Civ.P. 54(b) (emphasis added).
The purpose of Rule 54(b) is to "prevent piecemeal appeals in cases which should be *375 reviewed only as single units." Id. at 10. Additionally, the rule "allows judges to efficiently and fairly resolve separable claims before protracted litigation is finally resolved." Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897, 900 (Miss. 1987).
Here, following entry of an order granting summary judgment, plaintiffs made an attempt at compliance with the Rule. They filed a motion for entry of an amended order to include the sentence: "This order is a final judgment as provided by Miss.R. Civ.P. 54." After entry of the amended order, plaintiffs moved for a continuance. As grounds for the relief sought, plaintiffs stated that Triplett was impecunious and that it would be unfair to require them to incur the expense of trial before determining whether they had a claim against a defendant with the ability to pay. The motion was granted.
The wording of the amended order falls far short of what is required as can be readily seen from our discussion of the issue in Cox, supra, 512 So.2d at 899-900. The Court must determine "that there is no just reason for delay" and so state. Moreover,
[w]hile we will not require a trial court to set forth specific reasons and findings prefatory to entering a Rule 54(b) judgment, we will look with disfavor on such judgment. Indeed, unless the reason the judgment was granted is clear from the record, we will not search for a justification, but will vacate the appeal.
Cox, supra, 512 So.2d at 901.
We will entertain this appeal only because the record is clear that Triplett, the remaining defendant, is alleged to be impecunious and we assume that by responding favorably to plaintiff's motion for continuance, the trial court so found. To require a trial on the separate claim against Triplett before an appeal is heard on the present issue does not serve the interests of justice and fails to use efficiently our judicial resources. We will, therefore, treat the trial court's entry of the amended order as a determination that there is no just reason for delay. See, First United Bank v. Philmont Corp., 533 So.2d 449, 453 (Miss. 1988).

2. Did the Trial Court Err in Granting Summary Judgment in Favor of the VFW?

A. Was VFW Negligent?
Because May brought a negligence claim against the VFW, he had to prove by a preponderance of the evidence: duty, breach of duty, proximate cause and damages. Foster v. Bass, 575 So.2d 967, 972 (Miss. 1990); Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1354 (Miss. 1990); Phillips v. Hull, 516 So.2d 488, 491-92 (Miss. 1987). "Only when the first two items are shown is it possible to proceed to a consideration of proximate cause since a duty and breach of that duty are essential to a finding of negligence under the traditional and accepted formula." Foster, 575 So.2d at 972.
At the hearing on the summary judgment motion and in its brief on appeal, the VFW relies appropriately on Grisham v. John Q. Long VFW Post, No. 4057, Inc., 519 So.2d 413 (1988), in arguing that its duty was limited at most to exercising reasonable care to protect May and the other party goers from reasonably foreseeable injury at the hands of other patrons.
In Grisham, two ex-wives of the same man attended a dance at a VFW Post in Tupelo. The post sold beer and allowed patrons to bring their own spirits. As one of the women, Mabeline, exited the post, the other ex-wife, Hazel, standing outside of the door, struck her with a bottle enclosed in a paper bag. 519 So.2d at 414. A member of the band that was playing that night went to Mabeline's aid. The VFW officials then were informed of the matter, but responded that they were "too tied up to come out." Id. Subsequently, she filed suit against the VFW alleging that it was negligent for, inter alia, failing to keep the premises in a reasonably safe condition; failing to provide security personnel to protect guests from physical harm; failing to supervise and regulate the conduct of and activities so as to protect guests from physical harm; failing to assist her when members *376 were informed of her injury; failing to exercise ordinary care in the discharge of its responsibilities to prevent and protect patrons from such incidents; and allowing an atmosphere of violence to exist or develop on its premises. Id. at 414-15. The trial court entered a summary judgment order in the VFW's favor. This Court affirmed.
Noting that the VFW was not an insurer of Mabeline's safety, this Court held that the limit of VFW's duty was to exercise reasonable care to protect Mabeline from reasonably foreseeable injury at the hands of another. Id. at 419 (emphasis added). Kelly v. Retzer and Retzer, 417 So.2d 556 (Miss. 1982)[1] More particularly, an owner may be liable for the acts of a third person only when he has cause to anticipate the wrongful or negligent act. Grisham, 519 So.2d at 417.[2] "The requisite `cause to anticipate' the assault may arise from 1) actual or constructive knowledge of the assailant's violent nature, or 2) actual or constructive knowledge that an atmosphere of violence exists [on or about the premises.]" Id. at 416-17.
Nothing in the record demonstrates that the VFW could have been alerted to Triplett's impending actions. While he was at the bar, he did not appear to be drunk or boisterous. He only drank beer and shot pool and played other amusement games. The record does not support a conclusion that the VFW was the local "bar room brawl" type of establishment. See, e.g. Allen v. Babrab, Inc., 438 So.2d 356, 357 (Fla. 1983) (club had a history of fighting and other disturbances). Nonetheless, the VFW required the sponsors of the benefit to provide security. Consequently, the sponsors provided two security guards, and at least one of the guards broke up the fight between Triplett and May immediately. Furthermore, although May has insisted that the VFW was negligent in failing to provide adequate security, he failed to make a showing that an increased number of security guards would have prevented the attack. Grisham, 519 So.2d at 417.
The fact that the attack or altercation happened in a quick and unexpected manner also strikes against May's assertion that the VFW was negligent. The actors both agree that the altercation occurred quickly. As a matter of fact, May explained:
... I felt somebody tap me on the shoulder, and said, do you remember the 7-11, and I leaned forward in my chair like that and turned around to see who it was, and that's when I saw him hit me and that's the last thing I remember because I went out.
* * * * * *
... I didn't even get a chance to stand up or nothing. Supp.Vol. I, T. 23, 24.
In Kelly, although this Court relied on the decedent's voluntary intervention into the affray in determining that the defendants could not be liable for his death on its premises, we noted that the encounter was "sudden and spontaneous." 417 So.2d at 561. Other courts similarly have considered this criterion in determining whether a defendant could be held liable for the actions of a third-party against one of its patrons. See, e.g., Papadimas v. Mykonos Lounge, 439 N.W.2d 280, 283 (Mich. App. 1989) (summary judgment appropriate because the "incident ... occurred suddenly, unexpectedly, and to the complete surprise of the witnesses."); Delgado v. Laboucherie, Inc., 508 So.2d 956, 957-958 (La. App. 1987) ("incident occurred very quickly, and that there was nothing that could have been done to prevent it * * * attack on *377 plaintiff was sudden and could not have been reasonably prevented by defendants or their employees ... [S]cuffle broke out quickly"); White v. HA, Inc. 782 P.2d 1125, 1131 (Wyo. 1989) (plaintiff "failed to make even the threshold showing that [defendant] was placed on notice of impending danger to him."). Because of the spontaneity of the event in question, it is inconceivable that the VFW reasonably could have protected May from Triplett's attack.
From this evidence it is apparent that May has failed to establish a breach of the premises owner's duty to exercise reasonable care to protect May from reasonably foreseeable injury.

B. Is the VFW liable because Triplett was an employee?
May erroneously relies on several cases and insists that the VFW must be liable because Triplett was an employee, and he may have been at the benefit to perform his job. May asserts that because Triplett had cleaned up the hall on prior occasions on the night after an event that he may have come to do the same on this night. All of the evidence indicates otherwise. Triplett testified that he never cleaned up the dance hall at night immediately after a dance, but he did so the following morning. His other testimony revealed that he was not on call to clean up the hall on that night. Moreover, he never really had to clean up the area after a group had used the facilities because "[e]verybody always cleaned up after themselves."
Moreover, even if Triplett was present to clean up the area, it does not follow the VFW would be liable. In Odier v. Sumrall, 353 So.2d 1370, 1372 (Miss. 1978), this Court discussed the liability of an employer for his employee's actions:
It is of course established that the master is responsible for the torts of his servant only when they are committed within the scope of his employment. The test used in determining whether an employee's tortious act is within the scope of his employment is whether it was done in the course of and as a means to the accomplishment of the purposes of the employment and therefore in furtherance of the master's business ...
This Court again elaborated on these points in Seedkem South, Inc. v. Lee, stating that:

[t]he test of the employer's liability for the act of an employee who departs from the employer's business for purposes of his own is whether he was engaged in his employer's business at the time of the accident, and not whether he purposed [sic] to resume it. The employee is, so long as he is engaged in affairs of his own or in pursuing some purpose unrelated to his master's business, acting as much outside the scope of his employment as he would be were his working day ended, or his task completed, and thus his employer is relieved from liability for the consequence of any tortious conduct committed by the employee during that period, however short it may be... .
391 So.2d 990, 995 (Miss. 1980) (citation omitted) (emphasis in original).
Obviously, Triplett's fight with an adversary from years ago was not within the scope of his employment as a janitor. There is nothing whatsoever to suggest that his altercation with May was in anyway in furtherance of VFW's business. As the VFW asserts in its brief, "Triplett's presence at the V.F.W. hall on the night of the altercation was no different than that of the `bag boy' at the local Kroger who goes back to the grocery store after working hours to buy groceries and ends up in a fight with another customer in the frozen food section."

C. Was Summary Judgment appropriate?
This Court has reiterated the law of summary judgment in a litany of cases. In determining whether the trial court was proper in granting a motion for summary judgment, we conduct de novo review. The law governing the grant or denial of a motion for summary judgment is well established. The evidence must be viewed in the light most favorable to the party *378 against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
In evaluating the evidence that was before the trial court, there can be but one conclusion. The V.F.W. was not negligent. It had no knowledge of what was to happen. Triplett never had exhibited a propensity for violence. He was not intoxicated. He showed no violent intentions or behavior prior to the incident. Moreover, the fight occurred in such a quick manner, the V.F.W. could not have done anything to prevent it. In addition, the security personnel acted promptly in breaking up the fight. See, Grisham, 519 So.2d at 417. Reviewing the evidence de novo, this Court must come to the same conclusion as the trial court.
Based on the foregoing, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] Although Kelly, involved the killing of a person in the parking lot of a McDonald's Restaurant, and the case sub judice involves the selling of alcoholic beverages, the distinction is inconsequential. In Kelly as in Grisham, this Court maintained that the duty owed to patrons is the same. That is, the owner must exercise reasonable care for the safety of his patrons. Kelly, 417 So.2d at 560.
[2] May makes the disingenuous argument that Grisham's holding is limited because it controls the owner's duty to protect patrons from other patrons. This, however, can not be the case because the duty is to the patron no matter who is the third-party tortfeasor. "This duty arose out of the relationship between Mabeline and the V.F.W." Grisham, 519 So.2d at 417 (emphasis added).