743 So.2d 425 (1999)
Shamus SHARP, Appellant,
v.
Colquitt ODOM III, Christopher McRae, Carey McRae, Philip McRae and Carolyn McRae, Appellees.
No. 96-CA-01042-COA.
Court of Appeals of Mississippi.
June 8, 1999.
Rehearing Denied August 24, 1999.
Certiorari Denied November 24, 1999.
*427 Bobby L. Shoemaker, Bay Springs, Eddie Bowen, Raleigh, Attorneys for Appellant.
William McKinley, Jr., Edward J. Currie, Jr., Jackson, Ronnie L. Walton, Meridian, Attorneys for Appellees.
BEFORE KING, P.J., BRIDGES, AND LEE, JJ.
BRIDGES, J., for the Court:
¶ 1. While visiting the home of Philip and Carolyn McRae on December 27, 1991, Shamus Sharp was injured when he was accidentally shot by Colquitt Odom, III. Sharp argued that his injuries resulted from the combined negligence of Colquitt Odom, III, Philip McRae (Philip), Carolyn McRae (Carolyn), Christopher McRae (Chris), and Carey McRae (Carey). At the conclusion of the trial, the jury returned a verdict in favor of Sharp that awarded sharp damages in the amount of $62,500 and allocated one-hundred percent of the negligence to Odom. Sharp filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, all of which the trial court denied. Aggrieved, Sharp argues on appeal that (1) Philip is negligent and/or strictly liable for the injuries caused by allowing unlimited access to a firearm and ammunition in his home, (2) Philip negligently entrusted his rifle and ammunition to his minor sons, and the court erred by not allowing jury instruction P-2, and (3) the jury's verdict evinced bias and prejudice against Sharp and was against the overwhelming weight of the evidence. Sharp appeals asking the Court to reverse this case on the issues of liability and the inadequacy of damages and to grant a new trial. Odom, as well as the McRaes, have filed cross-appeals arguing *428 that the court erred by not allowing jury instructions on contributory and comparative negligence. They contend that if the case is remanded for a new trial, the jury should be allowed to consider Sharp's contributory negligence. Finding no merit to the issues raised, we affirm the judgment entered on the jury's verdict.

FACTS
¶ 2. On December 27, 1991, Sharp, Odom, Chris, and Carey met at the McRae home in Jasper County, Mississippi, for the purpose of sharing a ride to work. The boys worked for several hours that day planting trees, but due to rain they returned to the McRae home early that afternoon. Sharp and Odom decided to remain at the McRae home that afternoon to visit with Chris and Carey. Although Chris, Carey, and Odom were eighteen years old and Sharp was only sixteen years old, the record shows that Sharp and Odom considered the brothers to be their close friends, and that they visited the McRae household frequently.
¶ 3. While visiting in the bedroom shared by the twins, Chris and Carey, Odom began playing with a 30/30 unloaded lever-action rifle which was displayed openly on a gun rack. Curious to see how the rifle worked, Odom began working the action, that is pulling the lever and breaching the chamber. Subsequently, Odom loaded a bullet into the rifle and worked the action of the rifle which had the effect of cocking the hammer. Odom tried to let the hammer down by holding it, pulling the trigger, then letting the hammer down gently. However, Odom's hand slipped, and the rifle accidently discharged. The bullet struck Sharp in his right arm and entered his chest. On June 23, 1993, Sharp filed a complaint against Odom, Chris, Carey, Philip, and Carolyn. The complaint alleged that the defendants acted negligently and demanded money damages. The case went to trial on November 21, 1994. On November 23, 1994, the jury returned a verdict in favor of Sharp assessing his actual damages in the amount of $62,500 and allocating negligence one-hundred percent to Odom and zero percent to Philip, Chris, Carey and Carolyn. Sharp filed a motion for a judgment notwithstanding the verdict, or in the alternative for a new trial, which was overruled on August 26, 1996. Sharp has now filed this appeal and the McRaes and Odom have filed cross-appeals.

ARGUMENT AND DISCUSSION OF LAW

I. WHETHER THE ADULT OWNER OF A FIREARM AND AMMUNITION WHO ALLOWS UNLIMITED ACCESS TO THAT FIREARM AND AMMUNITION IN HIS HOME IS LIABLE FOR INJURIES CAUSED THEREFROM BY THE NEGLIGENCE OF A MINOR.
¶ 4. Sharp argues on appeal that Philip created a dangerous condition in his home by allowing unlimited access to the rifle and ammunition, and therefore, he was strictly liable or negligent as a matter of law. Specifically, Sharp contends that Philip (1) owned the rifle that injured Sharp, (2) allowed his sons to keep firearms and ammunition in their room from the time that they were sixteen years of age, (3) the firearms were kept in an open, unsecured, and unlocked gun rack, and (4) there was no outside locking device to prevent a visitor's access to the guns. Sharp argues that these facts created a dangerous situation and that Philip did not use extraordinary care to prevent a foreseeable injury. Philip argues that Sharp was aware of the danger, was knowledgeable about gun safety, and knew Odom was misusing the gun. Philip contends that Sharp cannot recover for injuries resulting from a situation he was not only aware of but posed risks that he appreciated.
¶ 5. In Mississippi, all questions of negligence and contributory negligence are determined by the jury. Miss.Code Ann. § 11-7-17 (1972). A jury verdict on *429 appeal will not be overturned unless the verdict was against the overwhelming weight of evidence or is a result of bias, passion, and prejudice. Southwest Miss. Reg'l Med. Ctr. v. Lawrence, et al., 684 So.2d 1257, 1267 (Miss.1996). To prove negligence, a plaintiff must show by a preponderance of the evidence the following elements: duty, breach of duty, proximate cause, and damages. May v. V.F.W. Post No. 2539, 577 So.2d 372, 375 (Miss.1991); Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1355 (Miss.1990). The duty or standard of care owed to a defendant depends upon the relationship between the parties. Skelton v. Twin County Rural Elec. Asso., 611 So.2d 931, 935 (Miss.1992). The Mississippi Supreme Court has held that a social guest, or invited guest, is a licensee or one who enters the property for his own benefit, pleasure, or convenience and with implied permission of the owner. Wright v. Caffey, 239 Miss. 470, 476, 123 So.2d 841, 844 (1960). The general rule for the duty owed to a licensee is that a host must refrain from wilfully or wantonly injuring the guest. Id.
Sharp argues that Philip owed him an extraordinary duty of care. Philip contends that the duty owed Sharp is that of a licensee. This Court agrees with the appellee that Sharp was a social guest of the McRae household, and Philip had only a duty to refrain from wilfully or wantonly injuring Sharp. Id. To wilfully or wantonly injure Sharp, Philip's conduct would have to exceed ordinary negligence and be a conscious disregard of a known, serious danger. Dry v. Ford, 238 Miss. 98, 100, 117 So.2d 456, 458 (1960). The record shows that there was sufficient evidence for the jury to consider and conclude that Philip was not negligent. There was testimony evidence presented that showed that Sharp frequently visited the McRae household and that Sharp knew that the McRaes hunted and kept firearms in the house. There was also testimony presented that showed the McRaes had established rules about not playing with the firearms inside of the house. The Mississippi Supreme Court has established that a guest must take the premises as he finds them, and in this case, there was sufficient evidence presented for a jury to conclude that Sharp knew of the conditions of the McRae household and that Philip did not wilfully injure Sharp by allowing his sons to keep firearms in their room.
¶ 6. Sharp also argues that because Philip knew that minors frequented the premises, it was foreseeable that an injury would occur by allowing the boys to keep firearms in their bedroom. However, an owner has no duty to protect against injury when "the minor generally would be expected to understand and avoid an obvious risk present in a dangerous or defective condition." Skelton, 611 So.2d at 937. There was testimony presented that showed Sharp was aware of the McRae family's use of firearms, yet he continued to visit their house regularly sometimes staying entire weekends with the family. Sharp himself testified during the trial that he was aware of the dangerous situation created when Odom began loading and unloading the rifle, but he did not tell Odom to stop, and he did not leave the room. This Court agrees with the appellee that there was sufficient evidence presented for a jury to determine that Sharp knew and appreciated the risks present in the McRae household and that Philip did not wilfully and wantonly injure Sharp and therefore was not negligent. Accordingly, this issue is without merit.

II. WHETHER PHILIP MCRAE WAS NEGLIGENT WHEN HE ENTRUSTED HIS 30/30 CALIBER HIGH-POWERED RIFLE AND AMMUNITION TO HIS MINOR SONS, AND, THE COURT ERRED BY REFUSING PLAINTIFF'S INSTRUCTION P-2.
¶ 7. Sharp argues that it was reasonably foreseeable that by entrusting his rifle to his minor sons, Chris and Carey, that harm was likely to occur as a result of negligence by anyone who had access to the rifle. Sharp also argues that because *430 Philip was a minister and had frequent visitors and guests in his home that he should be held to a high degree of care because he should have known that children and teenagers will play with guns if presented with an opportunity. Further Sharp argues that the trial court erred by failing to include jury instruction P-2 which reads as follows:
The court instructs the jury that, as a matter of law, you must find against the Defendants, Philip McRae and/or Carolyn McRae and/or Carey McRae and/or Christopher McRae and for the Plaintiff, Shamus Sharp.
Philip contends that this issue is without merit because neither Chris nor Carey was handling the rifle at the time of the accident. Philip also argues that there is no basis to find that he negligently entrusted the rifle to his sons, Chris and Carey, because both boys had completed gun safety and training courses and had demonstrated to their father on many occasions that they responsibly followed proper firearm safety.
¶ 8. The general rule for negligent entrustment is established by the Restatement (Second) of Torts § 390 and provides that:
One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
There is no prior precedent in Mississippi to establish a negligent entrustment of a firearm cause of action. However, Mississippi follows the general rule provided by the Restatement (Second) of Torts § 390 in cases that involve an owner of a vehicle negligently entrusting the vehicle to another. F.B. Walker & Sons v. Rose, 223 Miss. 494, 507, 78 So.2d 592, 595 (1955); see also Hood v. Dealers Trans. Co., 459 F.Supp. 684, 685-86 (N.D.Miss.1978) (holding the owner of a vehicle liable for negligence of a permissive user if the owner knew or should have known that user was reckless or incompetent). Mississippi courts will hold the owner liable for injuries only if the owner knew, or by the exercise of reasonable care should have known, that the individual using the vehicle was a "reckless or incompetent driver." Id. In this case, the chattel was a gun, and not a vehicle. The record shows that Philip testified that his sons were experienced in the use of firearms, that he had instructed them on the proper use of firearms, that the boys had proven themselves to be responsible in proper firearm safety, and that the boys had completed safety and training courses on how to properly handle and use firearms. Further, Philip argues that Sharp cannot prove negligent entrustment because neither Chris nor Carey were handling the gun at the time of the accident. This Court agrees with the appellee that the evidence establishes that there is no basis for finding that Philip knew or should have known that Chris and Carey would use the rifle in a way to pose an unreasonable risk of injury to themselves or others. Accordingly, this issue is without merit.

III. WHETHER THE JURY'S VERDICT EVINCED BIAS AND PREJUDICE AGAINST PLAINTIFF AND WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 9. The standard of review for challenges to the sufficiency of the evidence is well settled in this state. When reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, this Court's scope of review is limited as follows:
Where, as here, the trial judge has refused to grant a motion for JNOV, we examine all of the evidencenot just the evidence which supports the non-movant's casein the light most favorable to the party opposed to the motion. All *431 credible evidence tending to support the non-movant's case and all favorable inferences reasonably drawn there from are accepted as true and redound to the benefit of the non-mover. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, the motion should be granted. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.
C & C Trucking Co. v. Smith, 612 So.2d 1092, 1098 (Miss.1992) (citations omitted). In City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss.1983), the court stated:
It is no answer to say that the jury's verdict involved speculation and conjecture.... [A] measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Some guess work and speculation are necessarily involved in practically all jury verdicts, including those no one would dream of suggesting be disturbed.
. . . .
Our institutional role mandates substantial deference to the jury's findings off act and to the trial judge's determination whether a jury issue was tendered. When a verdict is challenged via appeal from denial of a motion j.n.o.v., we have before us the same record that the trial judge had. We see the testimony the trial judge heard. We do not, however, observe the manner and demeanor of the witnesses. We do not smell the smoke of battle. (citation omitted). The trial judge's determination whether, under the standards articulated above, a jury issue has been presented, must per force be given great respect here.
¶ 10. In motion for a new trial, the weight of the evidence is challenged. Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996).
The grant or denial of a motion for a new trial is and always has been a matter within the sound discretion of the trial judge. The credible evidence must be viewed in the light most favorable to the non-moving party. The credible evidence supporting the claims or defenses of the non-moving party should generally be taken as true. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion.
Moody v. RPM Pizza, Inc., 659 So.2d 877, 881 (Miss.1995).
¶ 11. In this case, the trial judge allowed the jury verdict to stand and denied Sharp's motion for a judgment notwithstanding the verdict or in the alternative a new trial. When considering a jury's award for damages on appeal, we are to determine whether or not there is substantial evidence to support the jury award, or whether or not a "reasonable, hypothetical juror" could have found as this jury found. Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985). The jury's verdict in a civil case is a finding of fact. Edwards v. Ellis, 478 So.2d 282, 289 (Miss.1985). Thus even if we do not agree to the amount awarded in the verdict, we are not allowed to supplant our judgment for that of the jury unless we conclude that there was insufficient evidence to support the award of damages or that the verdict was a product of bias, passion, or prejudice. South Central Bell Telephone Co., Inc. v. Parker, 491 So.2d 212, 217 (Miss.1986). The Mississippi Supreme Court has stated that bias, passion, *432 and prejudice can be inferred by contrasting the amount of the verdict and the amount of damages. City of Jackson v. Ainsworth, 462 So.2d 325, 328 (Miss.1984). Although we cannot know the mind of the jury, if the verdict amount is low in comparison to the evidence of damages, then the verdict may be a result of the jury's bias, prejudice, or passion. Matkins v. Lee, 491 So.2d 866, 868 (Miss.1986).
¶ 12. To begin with, Sharp, as the injured party, had the burden of going forward with sufficient evidence to prove his damages by a preponderance of the evidence. TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991, 1016 (Miss. 1997). This Court is required to view the evidence in a light most favorable to the jury's verdict. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992). In addition "[t]here are some damages, such as medical expenses and loss of income, which must be proved with reasonable certainty, but there are also some damages, such as pain and suffering, that are not susceptible of proof as to monetary value, and these items must be left to the discretion of the jury as long as the amount thereof, under all the evidence, is just and reasonable." Holmes County Bank & Trust v. Staple Cotton Co-op., 495 So.2d 447, 451 (Miss.1986)(quoting GRANT, SUMMARY OF MISSISSIPPI LAW, Sec. 980.1 (Supp. 1984)). Sharp argues that the jury verdict of $62,500 represents only $16,000 above his actual and future medical bills and is totally inadequate compensation. The record shows that Sharp testified about his medical bills, his pain and suffering, and the current and future condition of his health. Sharp also testified about his embarrassment and pain from the scarring, his partial loss of coordination and feeling in his right arm and hand, and his sleeping problems because of a brace he wears out of fear of losing blood circulation in his arm. The court instructed the jury to take into consideration any actual and future medical expenses, as well as, any physical and mental pain or suffering when determining an amount for damages. Sharp argues that the jury verdict for $62,500 only considers $33,966.26 for actual medical expenses plus the future expenses in the amount of $12,500 and leaves an amount of $16,033.74 which would not give him adequate compensation. Based on the evidence, we cannot say that the verdict evinced bias, passion, or prejudice on the part of the jury, nor was it against the overwhelming weight of evidence. South Central Bell Telephone Co. Inc., 491 So.2d at 217. After hearing all the testimony, the jury, as the ultimate finder of fact, rendered a verdict in favor of Sharp awarding him $46,466.26 in actual and future medical damages, plus an additional amount of $16,033.74. Id. The record shows that the jury's verdict was consistent with the evidence and covered all actual and future medical damages as well as pain and suffering. Matkins, 491 So.2d at 868. After careful review of the record, it is the opinion of this Court that there is sufficient evidence to support the jury's verdict. Accordingly, we find no basis to disturb the jury's verdict and the ensuing judgment.
¶ 13. In conclusion, the issues presented by the appellant are without merit, and a new trial will not be granted. The issues raised on cross-appeal by the McRaes and Odom were only to be considered if the case was remanded for a new trial. Therefore, we will not discuss these issues.
¶ 14. THE JUDGMENT OF THE JASPER COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.