MYERS, P.J.,
for the Court:
¶ 1. Beverly Kay Kendrick, individually and as wrongful-death beneficiary of Thomas Dixon, filed a complaint in the Marion County Circuit Court against Laura Quin. The complaint alleged that Dixon, while an invitee in Quin’s home, suffered injuries and death as a result of a fire in and upon Quin’s premises, and that such injuries and death were the proximate cause of Quin’s negligence in failing to keep her premises free of hazards and in a reasonably safe condition for use by an invitee such as Dixon. Finding no genuine issue as to any material fact, the circuit court granted Quin’s motion for summary judgment. We affirm.
FACTS
¶ 2. At approximately 10:30 p.m. on January 2, 2006, a fire broke out in the family room of Quin’s home. Fire investigators later determined that the fire originated in or around an upholstered recliner located *647 in that room. Having found what appeared to be crystal glass fragments consistent with that of an ashtray located at the foot of the recliner, the investigators concluded that the fire was likely the result of non-extinguished smoking materials.
¶ 3. Quin, age sixty-seven when the incident occurred, testified in her deposition that Dixon, age seventy-four, had been staying with her in her home since July 2005 following his leg surgery. According to Quin, Dixon lived alone, and his doctor would not release him from the hospital unless Dixon had somebody to take care of him while his leg healed. Quin said she and Dixon were very close, so she volunteered to let him stay with her while he recuperated.
¶4. Quin stated that on the evening of the fire, she and Dixon cooked steaks at approximately 5:00 p.m. Afterwards, they went outside where Dixon usually smoked his cigarettes, and they talked. At approximately 7:00 p.m., Quin went inside and got ready for bed. A short while later, Dixon came into her room and asked Quin to change his leg bandage. Quin did, and Dixon then went into the living room to watch television. Quin recalled that Dixon, who “was very hard of hearing,” came back into her room at one point and asked if the television was too loud. Quin said no, and Dixon shut her bedroom door and went back to watching television. Sometime between 10:00 p.m. and 11:00 p.m., Quin awoke to the sound of her smoke alarm and Dixon calling her name. She hurried out of bed, opened her bedroom door, and saw her recliner smoldering. The recliner then began to blaze; Quin attributed the blaze to her having opened her bedroom door. She told Dixon, who was standing near the recliner, “let’s go ... the house is on fire.” Dixon responded that he needed to get his crutches. Quin told him there was no time, and she instructed him to hold on to her. Quin said one of the room’s walls became engulfed in flames, and the room filled with black smoke. Unable to see, she felt her way through the room with her hands. She said Dixon was behind her at this point holding onto her. According to Quin, as they proceeded through the room, the lights went out and she and Dixon became separated. Quin made her way into her beauty parlor where a phone was located and called 911.[1] She then wet some towels to put to her face and began yelling out to Dixon. Around that time, one of Quin’s neighbors entered the house, grabbed her, and took her outside. The fire department arrived minutes later. They found Dixon’s deceased body lying in the doorway of one of the home’s bedrooms. One of Dixon’s crutches was found in the family room lying in front of the recliner; the other was found nearby in the kitchen.
¶ 5. Dixon’s daughter, Kendrick, filed a complaint alleging negligence based on the theory of premises liability. That theory was all but abandoned following discovery. Kendrick then proceeded on the theory of simple negligence, averring that Quin had failed to get Dixon out of the house safely. Kendrick claimed that Quin had established a duty to assist Dixon when she told Dixon she would help him out of the house, and Quin breached that duty by leaving Dixon to fend for himself. In support of this proposition, Kendrick claimed that Quin’s statement in her deposition that she lost Dixon in the dark conflicted with her statement that the recliner was ablaze. According to Kendrick, the flames would have given off enough light for Quin to have seen Dixon. Thus, Kendrick con *648 tends a jury could reasonably infer that Quin had physical contact with Dixon but then abandoned her efforts to help him. Alternatively, Kendrick submitted that a jury could also reasonably infer from the evidence that Quin, who stated in- her deposition that she was Dixon’s “caretaker,” never even attempted to assist Dixon. For this proposition, Kendrick pointed to the fact that Quin indicated in her deposition that Dixon had his own bedroom where he slept, yet investigators found some of Dixon’s personal belongings in Quin’s bedroom. According to Kendrick, one could reasonably conclude from this evidence that Dixon was actually asleep next to Quin when the fire started, and Quin simply forgot about him in the confusion.
¶ 6. The circuit court granted Quin’s summary-judgment motion, in which Quin had submitted that Kendrick failed to present evidence that could establish that Quin owed a duty to Dixon or that such duty, if any, was breached. The circuit court did not submit any findings of fact and conclusions of law with its decision. Kendrick appeals, claiming the circuit court erred in its decision.
STANDARD OF REVIEW
¶ 7. This Court reviews a trial court’s decision to grant or deny summary judgment de novo. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77 (¶ 9) (Miss.2002). Summary judgment is proper only where the trial court, after construing all the evidentiary matters before it in the light most favorable to the non-moving party, finds there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Evans v. Hodge, 2 So.3d 683, 685 (¶ 4) (Miss.Ct.App.2008) (citing M.R.C.P. 56(c)). To withstand summary judgment, the non-moving party must rebut the motion with significant probative evidence showing there are genuine issues for trial. Borne v. Dunlop Tire Corp., 12 So.3d 565, 570 (¶ 16) (Miss.Ct.App.2009) (citation omitted). “An adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial.” Id. Also, “each element of each claim must be based on more than a scintilla of evidence; it must be ‘evidence upon which a fair-minded jury could return a favorable verdict.’ ” Id.
ANALYSIS
¶ 8. Kendrick argues both simple negligence and negligence based upon premises liability. But, from the controlling facts and circumstances of this case, Kendrick, as will be explained, was limited to a premises-liability theory of recovery.
¶ 9. The elements of negligence are duty, breach of duty, causation, and damages. Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376-77 (Miss.1997). Under the doctrine of premises liability, the duty owed to an entrant on another’s premises is determined by the entrant’s legal status. Mississippi follows the common-law distinctions between invitees, licensees, and trespassers in determining that status. Little ex rel. Little v. Bell, 719 So.2d 757, 760 (¶ 14) (Miss.1998). Generally, an invitee is one who enters upon another’s premises in answer to the express or implied invitation of the owner or possessor for their mutual advantage; a licensee is one who enters upon another’s premises for his or her own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner or possessor; and. a trespasser is one who enters upon another’s property without invitation, license, or other right. Id. at (¶ 15).
*649 ¶ 10. A landowner owes an invitee the duty to keep the premises reasonably safe and, when not reasonably safe, to warn where there is hidden danger or peril that is not plain and open. Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss.1992). A landowner owes a licensee and a trespasser the duty to refrain from willfully or wantonly injuring them. Adams ex rel. Adams v. Fred’s Dollar Store of Batesville, 497 So.2d 1097, 1100 (Miss.1986).
¶ 11. As to Dixon’s status, we note the case of Wright v. Caffey, 239 Miss. 470, 123 So.2d 841 (1960). There, a mother sued her daughter alleging negligence after suffering injury from a fall in her daughter’s home. Id. at 472-73, 123 So.2d at 841-42. The daughter had invited her mother for a visit days prior to the incident; during the mother’s stay, the mother, who was elderly, had become ill and bedridden. Id. at 472, 123 So.2d at 841. On the question of legal status, the Mississippi Supreme Court held that the mother was a gratuitous licensee. Id. at 478, 123 So.2d at 844. The supreme court found that the daughter’s invitation to her mother was not for the mother and daughter’s mutual benefit; rather, it was conditioned on hospitality. Id. at 474, 123 So.2d at 842-43. The court said, one who enters upon another’s premises “as a guest of the owner or occupant, or to receive a gratuitous favor, is usually regarded as a licensee.” Id. at 475, 123 So.2d at 843. (Citation and internal quotations omitted). The court added: “the phrase gratuitous licensee includes social guests who, in a sense, are persons temporarily adopted into the [premise owner’s or occupant’s] family....” Id. (internal quotations omitted).
¶ 12. Here, based on the summary-judgment evidence, Quin invited Dixon into her home as a gratuitous favor to him. She thereafter took care of him without any remuneration or material benefit to her. In accord with Wright, Dixon legally was a licensee throughout his stay with Quin.
¶ 13. Quin’s duty in regard to Dixon was to refrain from willfully or wantonly injuring him. Adams, 497 So.2d at 1100. In Raney v. Jennings, 248 Miss. 140, 147-48, 158 So.2d 715, 718 (1963), the supreme court held as follows with regard to willful and wanton conduct in relation to a social guest:
Willfulness and wantonness connote knowingly and intentionally doing a thing or wrongful act.... The guest assumes the ordinary risks which are attached to the premises. No exception is made because of the fact that the guest enters on the host’s express invitation to enjoy his hospitality. A host merely offers his premises for the enjoyment of his guests with the same security which the host and members of his family who reside with him have.
¶ 14. Kendrick presented no evidence that Quin knowingly and intentionally caused the fire — the condition on her premises that caused Dixon’s death. Nor is there evidence, from which reasonable minds could rationally conclude, that Quin willfully and wantonly caused Dixon to succumb to the fire. Accordingly, we find that the circuit court correctly granted summary judgment in favor of Quin.
¶ 15. With regard to Kendrick’s claim that Quin was negligent in failing to assist Dixon out of the house safely, our supreme court’s decision in Little rules it out. In Little, the supreme court rejected the petitioners’ request that Mississippi “abolish the common-law distinctions of trespassers, licensee, and invitee and apply the ordinary and reasonable standard of care under the circumstances whereby foreseeability would be the measure of liability.” Little, 719 So.2d at 763 (¶ 27). The court *650 acknowledged that in Hoffman v. Planters Gin Co., 358 So.2d 1008 (Miss.1978), it had applied the standard of ordinary and reasonable care rather than the standard of intentional or wanton negligence due a licensee. Little, 719 So.2d at 761 (¶ 22). The court noted that Hoffman carefully limited that standard of care to those cases where the resulting injury resulted from active conduct rather than conditions of the premises, or passive negligence. Id. at 761-62 (¶ 22). And the court added that Hoffman limited the exception to those cases involving the operation or control of a business. Id. at 762 (¶ 22).
¶ 16. Here, Quin was not engaged in affirmative or active negligence while in the operation or control of a business as held by the Little• court’s interpretation of Hoffman. Accordingly, this claim is without merit.
¶ 17. THE JUDGMENT OF MARION COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.

. Quin, a beautician, operated a beauty shop out of her home.