# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01666-COA

**TAKIA MAYS, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE AND HEIRS-AT-LAW AND/OR WRONGFUL DEATH BENEFICIARIES OF ROSALYN PACKER, DECEASED**                                    APPELLANT

v.

**SHOEMAKER PROPERTY MANAGEMENT, LLC AND CAROLINE DEVELOPMENT, LLC**                        APPELLEES

DATE OF JUDGMENT:                11/03/2016
TRIAL JUDGE:                     HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:       FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          CARLOS EUGENE MOORE
ATTORNEYS FOR APPELLEES:         PATRICK H. ZACHARY
                                 JACK W. LAND
NATURE OF THE CASE:              CIVIL - WRONGFUL DEATH
DISPOSITION:                     AFFIRMED - 04/24/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., FAIR AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Takia Mays, the daughter and beneficiary of Rosalyn Packer, sued Shoemaker Property Management LLC and Caroline Development LLC after Packer died in a fire at an apartment managed by Shoemaker and owned by Caroline. Shoemaker and Caroline successfully moved for summary judgment because Mays had not designated an expert witness to support her negligence theory or her claim for breach of the implied warranty of habitability. Mays appeals. Finding no error, we affirm.

FACTS

¶2.     In 2012, Alfreda Miles was residing in an apartment at 200 Tuscan Avenue in Hattiesburg, Mississippi. Miles's sister, Packer, had been having difficulties with Mays, so Miles allowed Packer to stay with her through the holidays. On November 15, 2012, a fire broke out in the apartment. Packer was the only one there at the time and unfortunately she died as a result.

¶3.     Both the City of Hattiesburg and the State of Mississippi investigated the fire and reported that "[p]otential heat/ignition sources identified within the area of origin included the stove and or some type of human involvement." Moreover, they both reported that the "electrical outlets and . . . devices were eliminated as possible ignition sources." Ultimately, both ruled it an accidental fire and closed the file.

¶4.     In January 2012, Miles had reported that her stove would not turn off. On January 20, 2012, Shoemaker replaced it. According to the record, there were no new work reports filed regarding the new stove. In her deposition, Miles testified that she told George Moore, an electrician, that she had been having issues with her lights and smoke detector because a circuit breaker was not working properly. In May 2012, Moore checked and replaced the breaker that serviced Miles's air conditioning unit. In his deposition, Moore testified that the breaker was old and needed to be replaced. But Moore did not pull out all of the breakers from the box to inspect the electrical system as a whole, because he had only been called to repair the air conditioner. In October 2012, Miles's heat, tub, and kitchen sink were repaired. No other work orders were placed nor repairs completed between October 2012 and the fire

in November 2012.

¶5.   Mays sued individually, as the personal representative of Packer's estate, and on behalf of Packer's wrongful-death beneficiaries. Mays raised claims of premises liability and breach of the implied warranty of habitability. In March 2014, Mays filed a complaint and an amended complaint. In September 2014, Mays filed a second amended complaint.

¶6.   In January 2015, the original scheduling order set deadlines for discovery to be completed by July 31, 2015. Mays had to designate her experts by May 29, 2015. Shoemaker and Caroline had until June 29, 2015, to designate their experts. In July 2015, the scheduling order was amended to extend discovery to August 31, 2015.

¶7.   On October 5, 2015, the circuit court granted Shoemaker and Caroline's motion for partial summary judgment regarding Mays's premises liability claim, leaving implied warranty of habitability as Mays's only remaining claim. On October 13, 2015, the circuit court excluded J. Albert McEachern Jr. as an expert witness for Mays. McEachern was set to testify as to the causation of the fire. On April 12, 2016, the circuit court granted Shoemaker and Caroline's motion to exclude James Butts's expert testimony, but denied their motion to exclude James Vickers as an expert. Butts was also set to testify as to the causation of the fire. The circuit court also denied Shoemaker and Caroline's motion for summary judgment as to the claim that they had breached the implied warranty of habitability.

¶8.   Lastly, on November 3, 2016, the circuit court entered an order denying Mays's motion to substitute electrical expert witness and granted Shoemaker and Caroline's motion

for summary judgment regarding Mays's remaining claim. Mays appeals.

## DISCUSSION

> I. *Whether the circuit court erred in denying Mays's motion to substitute electrical expert witness.*

¶9. Mays asserts that the circuit court abused its discretion when it denied her motion to designate Vickers as an expert witness. We disagree. This Court has held that a "circuit court's admission or exclusion of an expert witness is analyzed for abuse of discretion." *Huggins v. GuideOne Servs. LLC*, 100 So. 3d 499, 501 (¶7) (Miss. Ct. App. 2012) (citing *Denham v. Holmes ex rel. Holmes*, 60 So. 3d 773, 783 (¶34) (Miss. 2011)). Abuse of discretion "means 'clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing.'" *Douglas v. Burley*, 134 So. 3d 692, 697 (¶13) (Miss. 2012) (quoting *White v. State*, 742 So. 2d 1126, 1136 (¶42) (Miss. 1999)).

¶10. The circuit court gave Mays multiple opportunities to designate expert witnesses. The original deadline for Mays to designate expert witnesses was May 29, 2015. On July 23, 2015, the circuit court granted Shoemaker and Caroline's motion to amend the scheduling order so they could depose McEachern, who at the time was Mays's only expert witness. After the extension of the scheduling order, on August 10, 2015, Mays amended her designation of expert witnesses to include Dr. Roger A. Mitchell Jr. Then on December 23, 2015, Mays submitted a second amended designation of experts, adding Vickers, James

4

Butts, and Dr. Ray Franco, PE.[1]

¶11.    In April 2016, Mays was given notice, in a hearing and in an order, that Butts would not be allowed to testify as an electrical expert. Moreover, during the hearing, the circuit court judge forewarned Mays that he did not think she would be able to defeat a future summary judgment motion with only Vickers's expert testimony. Mays did not file her motion to substitute some unspecified electrical expert until October 24, 2016, one day before the scheduled hearing on Shoemaker and Caroline's motion for summary judgment. During the hearing on Mays's "motion to substitute electrical expert" and Shoemaker and Caroline's motion for summary judgment, the circuit court stated that "time for designation of experts has long since passed." Furthermore, in the order, the circuit court stated that Mays "did not demonstrate good cause for allowing a substitution." We find that it was within the circuit court's discretion to deny Mays's motion.

II.    *Whether the circuit court erred in granting Shoemaker and Caroline's motion for summary judgment.*

¶12.    This Court will review a trial court's grant or denial of summary judgment de novo. *Alonso v. Ross*, 223 So. 3d 194, 196 (¶7) (Miss. Ct. App. 2017) (citing *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (¶5) (Miss. 2005)). Under Mississippi Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[1] The admissibility of expert opinions by McEachern, Dr. Mitchell, and Dr. Franco are not discussed.

5

¶13. "If any triable facts exist, the lower court's grant of a summary judgment will be reversed; otherwise the decision will be affirmed." *Miller v. Meeks*, 762 So. 2d 302, 304 (¶3) (Miss. 2000). "The evidence must be viewed in the light most favorable to the party opposing the motion." *Alonso*, 223 So. 3d at 196 (¶7) (citing *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004)). However, we have also held that "when a party[] opposing summary judgment on a claim or defense . . . fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law." *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987).

¶14. Without expert testimony as to the causation of fire, Mays was unable to make a prima facie case of breach of the implied warranty of habitability. The standard for implied warranty of habitability "require[s] a landlord to provide reasonably safe premises at the inception of a lease, and to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant, unless expressly waived by the tenant." *Sweatt v. Murphy*, 733 So. 2d 207, 210 (¶7) (Miss. 1999) (quoting *O'Cain v. Harvey Freeman & Sons Inc.*, 603 So. 2d 824, 833 (Miss. 1991)). Mays held the burden of proof to "show duty, breach, causation and damages." *Id.* at 211-12 (¶12).

¶15. Shoemaker and Caroline's duty to Miles[2] was to provide "reasonably safe premises"

---

[2] Miles was the tenant and Packer was a licensee. This Court has held that one who enters upon another's premises "as a guest of the owner or occupant, or to receive a gratuitous favor, is usually regarded as a licensee." *Kendrick v. Quin*, 49 So. 3d 645, 649 (¶11) (Miss. Ct. App. 2010). "A landowner owes a licensee and a trespasser the duty to refrain from willfully or wantonly injuring them." *Id.* (citing *Adams ex rel. Adams v. Fred's Dollar Store of Batesville*, 497 So. 2d 1097, 1100 (Miss. 1986)).

and "to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant . . . ." *Id.* at 210 (¶7). On January 16, 2012, Miles notified Shoemaker that her stove was not properly working and it was replaced four days later. After a thorough review of the record, we find no other indications of notice about the stove was given to Shoemaker. Therefore, we find that Shoemaker upheld its duty to repair defective conditions made known by Miles.

¶16. Furthermore, the "breach of a duty must be the proximate cause of the injury suffered." *Sample v. Haga*, 824 So. 2d 627, 632 (¶8) (Miss. Ct. App. 2001) (citing *Baggett v. Kornegay*, 781 So. 2d 139, 140 (¶3) (Miss. Ct. App. 2000)). This Court held that the proximate cause is the "cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." *Id.* (quoting *Delahoussaye v. Mary Mahoney's Inc.*, 783 So. 2d 666, 671 (¶13) (Miss. 2001)).

¶17. To be successful on her claims, Mays had the burden of proving the proximate cause of Packer's death was the "natural and continuous" result of Shoemaker and Caroline's breach of duty. As stated above, both the City of Hattiesburg and the State of Mississippi investigated the fire and reported:

> [P]otential heat/ignition sources identified within the area of origin included the stove and[/]or some type of human involvement . . . . The electrical outlets and . . . devices were eliminated as possible ignition sources. The evidence found on the stove indicated that the stove's right rear burner was on. There was a small pot that had partially melted onto the right rear burner with scorch marks on the bottom of the pot.

Shoemaker and Caroline put on evidence and argued in accordance with the fire marshal's

7

report, that:

> It is our opinion, based on the observed pattern of fire damage and a systematic evaluation of the remaining physical evidence, photographs of the free standing electric range[,] and within a reasonable degree of fire science certainty that the fire originated in the kitchen at the right rear heating element on the electric range.

And taking their claim one step further, they reasoned that "[t]he cause of the fire was the ignition of a cooking substance due to unattended cooking."

¶18. To rebut this claim, Mays attempted, through Vickers's proposed expert testimony, to assign causation of the fire to "electrical irregularities." According to Mays's appellate counsel, Vickers could "lead you to the electrical irregularity behind the stove, but is not comfortable to a reasonable degree of electrical certainty about what happened." Thus, Mays was unable to produce an electrical expert in the time allotted for designation of expert witnesses.

¶19. The circuit court stated that "[t]he [c]ourt has viewed the evidence in a light most favorable to the plaintiff, and finds that no genuine issue of material fact exists as to the plaintiff's failure to make out a prima facie case of breach of the implied warranty of habitability." After reviewing the record, we find no error.

## CONCLUSION

¶20. We find that it was within the circuit court's discretion to deny Mays's motion to substitute an unspecified electrical expert witness. Furthermore, without expert testimony regarding the proximate cause of the fire, Mays was not able to make a prima facie case for breach of the implied warranty of habitability. Therefore, summary judgment was properly

8

granted.

¶21.	**AFFIRMED**.

  **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND TINDELL, JJ., CONCUR.  WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**