BRIDGES, J., for the court.
¶ 1. Riccardo Rausa filed a complaint against George Rogers, on September 4, 1998, alleging that he suffered permanent injuries and damages and future medical bills as a result of a motor vehicle collision which occurred on May 21, 1997. The case was tried before a jury in the Hinds County Circuit Court on the issue of damages only. The jury returned a verdict in favor Rausa in the amount of $100,000. It is from that judgment that Rogers now appeals to this Court.
*750 STATEMENT OF THE ISSUES
I. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. WHETHER THE TRIAL COURT ERRED BY ALLOWING DR. WILLIAM KNIGHT TO TESTIFY CONCERNING FUTURE MEDICAL BILLS.
III. WHETHER THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF THE PLAINTIFF’S ALLEGED FUTURE MEDICAL DAMAGES WHEN THEY WERE NOT INCLUDED IN THE PRETRIAL ORDER.
IV. WHETHER DR. KNIGHT’S TESTIMONY WAS UNRELIABLE AND SHOULD BE DISREGARDED.
FACTS
¶ 2. Neither of the briefs submitted in this case contained a statement of facts. However, this appeal arises from an automobile collision between the parties. On the first day of trial, the parties stipulated to the defendant’s admission of liability and only the issue of damages was submitted to the jury for resolution.
ANALYSIS
I. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 3. “In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Wal-Mart Stores, Inc., v. Frierson, 818 So.2d 1135, 1143(¶ 16) (Miss.2002). “Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Id.
¶ 4. After the collision, Rausa went to his family physician. He was then referred to a specialist, Dr. William Knight, a board certified physiatrist. Dr. Knight stated that Rausa’s MRI scan revealed a disc bulge in the L4-5 disc protruding in a backwards direction. On May 12, 2000, Dr. Knight did another MRI which showed a slight shift to the left of the disc bulge. At trial, Dr. Knight testified that the conditions for which he treated Rausa were caused by the auto collision and it was Dr. Knight’s opinion that Rausa’s position of being twisted, looking back at the vehicle that struck the right rear of his automobile was consistent with his medical findings.
¶ 5. Dr. Knight also testified that, as to future medical expenses, Rausa would probably require injection therapy from one to four times a year, physical therapy for one to two weeks a year, and medications for the remainder of his life. Dr. Knight clarified on redirect that there was no evidence that anything other than the motor vehicle collision caused Rausa’s back problems.
¶ 6. Rausa also testified at trial and stated that when he had exacerbations they would last a day to a week before he returned to his pre-exacerbation condition. He stated that his normal condition on an everyday basis included constant tightness in his back and sometimes throbbing pain.
¶ 7. At the time of the trial, Rausa had incurred past medical expenses in the amount of $8,356.59 and lost wages of $2,400 according to the medical bill summary which was admitted into evidence. The most conservative estimate of future medical expenses would be slightly over $1,000 a year for 44.3 years. In the record there was testimony, not only concerning *751 permanent injuries, physical pain and suffering, but also emotional distress, future disability, and loss of enjoyment of life.
¶ 8. It is clear from the record that there was sufficient evidence to support the jury’s verdict; therefore, this issue is without merit.
II. WHETHER THE TRIAL COURT ERRED BY ALLOWING DR. WILLIAM KNIGHT TO TESTIFY CONCERNING FUTURE MEDICAL BILLS.
¶ 9. Rogers argues that until one week before trial he was defending a claim for approximately $8,000 in past medical expenses and by mid-day on the Friday before trial, he was instead defending claims for past and future medical expenses in excess of $100,000 without any reasonable opportunity to respond.
¶ 10. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss. 2002). In the case of Peterson v. Ladner, the plaintiff designated a medical expert to testify that the plaintiff suffered from a permanent injury which would render him unable to return to his previous occupation. Peterson v. Ladner, 785 So.2d 290, 295(1118) (Miss.Ct.App.2000). In that ease, we discussed whether or not the plaintiff put the defendant on fair notice of the disputed testimony of the physician and held that where there is no inconsistent testimony and as long as the defendant has notice of the subject matter, then fair notice was given. Id at (¶ 24). Aso in the Peterson case, this Court cited the case of Illinois Central R.R. Co. v. Gandy, 750 So.2d 527, 532 (Miss.1999), where the Mississippi Supreme Court held that as long as the opposing party had adequate notice of the expert witness and the subject of his opinion testimony, the trial court does not have to grant a motion for continuance. Id. at (¶ 23).
¶ 11. Rogers was first given notice that Rausa had a permanent injury and was going to require medical treatment for the remainder of his life before a lawsuit was ever filed in a letter sent to Rogers’s insurance carrier dated August 20, 1998. A copy of this letter was even attached to Rausa’s response to Rogers’s motion for a continuance. The letter advised Rogers that Rausa was released with permanent restrictions in his work capacity, that he had a 5% whole person permanent impairment rating, that Rausa would need to be seen on a yearly basis for re-evaluation for monitoring of medication and for refills, and that his future medical could be in excess of $20,000.
¶ 12. In addition, Rogers was given medical authorization from Rausa to obtain all medical records directly from Rausa’s healthcare providers, and in particular Dr. Knight. Rausa even wrote to each provider advising them to cooperate with Rogers’s counsel in obtaining the necessary records. Rausa provided Rogers with the opportunity to take medical depositions of any of Rausa’s healthcare providers; however, this opportunity was declined by Rogers.
¶ 13. Rausa continued to provide Rogers with additional medical records of Dr. Knight and his office, Gulf States Rehabilitation Associates. Rogers subpoenaed the records from Gulf States Rehabilitation Associates, which included the records of Drs. Knight, Oliveros, and Katz.
¶ 14. As is evident from the aforementioned facts in evidence, Rogers should have been aware that the subject of future medicals would be an issue throughout this litigation. The evidence shows that through the pre-suit letter to the insurance carrier, the complaint, in discovery answers, and in the medical records obtained, *752 Rogers should have been aware that notice was given as to future medicals. We find that Rogers chose to disregard and/or ignore that he has been on notice of Rausa’s claim for future medicals.
III. WHETHER THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF THE PLAINTIFF’S ALLEGED FUTURE MEDICAL DAMAGES WHEN THEY WERE NOT INCLUDED IN THE PRETRIAL ORDER.
¶ 15. Rogers asserts that since the pretrial order did not specifically identify the type of medical bills that were being sought, i.e., past or future, then Rausa should be barred from presenting evidence of future medical losses.
¶ 16. “If a claim or issue is omitted from the [pre-trial] order, it is waived, even if it appeared in the complaint.” Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 206 (5th Cir.1998).
¶ 17. The pre-trial order stated that as a result of the collision, Rausa suffered injuries and damages including medical bills, lost wages, pain and suffering, loss of enjoyment of life, permanent injury, and other damages. Just because the pre-trial order specifically acknowledged that Rau-sa suffered from a permanent injury and suffered other damages, certainly those damages were not limited to only those that had been incurred prior to the date of the lawsuit. There is absolutely no indication that the medical bills did not include past, present, and/or future medical bills. For the reasons given in the foregoing discussion, this Court finds that Rogers was aware of any future medicals. Therefore, we find that the pre-trial order did not limit Rausa to seek only those items of damages which had been incurred as of the date of the trial. This issue is also without merit.
IV. WHETHER DR. KNIGHT’S TESTIMONY WAS UNRELIABLE AND SHOULD BE DISREGARDED.
¶ 18. From the briefs submitted, it is not clear whether the appellant’s argument concerns the relevance of the doctor’s testimony or his expert qualifications. Regardless of which issue was intended, the standard of review remains abuse of discretion. “Under this Court’s standard of review, the admissibility of evidence rests within the trial court’s discretion.” Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000). “Unless his or her judicial discretion is abused, this Court will not reverse his or her ruling. The qualifications of an expert in fields of scientific knowledge is left to the sound discretion of the trial judge.” Id.
¶ 19. However, it should be noted that this Court sits to review alleged errors committed at the trial level and not to adjudicate the merits of claims not previously presented to the trial court for resolution. Denson v. State, 746 So.2d 927, 932(¶ 17) (Miss.Ct.App.1999). At trial, Rogers never objected to any of the testimony given by Dr. Knight on the basis that his opinions were unreliable or lacked scientific or factual basis. Additionally, Rogers did not claim in his motion for JNOV or new trial that Dr. Knight’s testimony and opinions were erroneously admitted because they were unreliable or lacked scientific or factual basis. Because Rogers failed to preserve the issue at the trial court level, we find that he is procedurally barred from raising the issue on appeal.
¶ 20. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
*753 McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.