# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00672-COA

**CHARLES RICHARD ROBB**                                                **APPELLANT**

**v.**

**DENISE A. McLAUGHLIN**                                                **APPELLEE**

DATE OF JUDGMENT:                          03/08/2021
TRIAL JUDGE:                               HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:                 RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:                    ALLISON PERRY FRY
ATTORNEY FOR APPELLEE:                     CHADWICK MITCHELL WELCH
NATURE OF THE CASE:                        CIVIL - PERSONAL INJURY
DISPOSITION:                               AFFIRMED - 09/26/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Denise McLaughlin sued Richard Robb for negligence, infliction of emotional distress, invasion of privacy, defamation, and libel after Robb posted a false online advertisement for a prostitute and listed McLaughlin's phone number. A jury found Robb liable, and he was ordered to pay McLaughlin $285,750 in damages. Robb now appeals, arguing that his due process rights were violated, the trial court erred by allowing McLaughlin to pursue multiple claims against multiple defendants, the damages award was wholly speculative, and the trial court should have bifurcated the proceedings. He also argues the trial court should have required medical-expert testimony, the trial court should have refused certain jury instructions, and the doctrine of cumulative error requires reversal. Finding no reversible error, we affirm.

**FACTS**

¶2.     Robb and McLaughlin were both employed by the Mississippi State Ratings Bureau (MSRB).  Robb worked as an information technology manager, and McLaughlin worked as an underwriter in the MSRB's windstorm division.  McLaughlin made multiple complaints to her supervisors at MSRB concerning Robb. McLaughlin was first concerned that Robb had installed spyware on her computer and was watching her. McLaughlin complained to her supervisors about the relationship between Robb and another female employee, which McLaughlin perceived as inappropriate because their conversations were sexual in nature, and Robb was married. McLaughlin stated that the relationship between the other female employee and Robb was distracting because McLaughlin shared a cubicle with the female employee.

¶3.     In November 2016, Robb posted McLaughlin's phone number on a website, advertising her as a prostitute. McLaughlin alleged he was retaliating against her for complaining about him to her supervisors. Robb made two separate postings on www.backpage.com. The advertisements featured a provocative photograph of a redheaded woman (who was not McLaughlin) in lingerie. Robb used the name "Denisa" in the advertisement. The posts advertised sex for money and urged people to call the phone number, which belonged to McLaughlin.

¶4.     McLaughlin began receiving dozens of calls and texts from unfamiliar numbers. McLaughlin, a woman in her sixties who lived alone, was confused and scared. McLaughlin stated, "They were asking me for sex and they were asking me to meet them." The calls were

made "all day[,] [a]ll night[, and in the] [e]arly mornings" and "went on for weeks." After weeks of fear and confusion, McLaughlin called one of the numbers, and the man who answered informed her he had obtained her number from www.backpage.com.[1]

¶5.    McLaughlin testified she "just knew" it was Robb. McLaughlin reported the advertisement to her supervisors at work. She also filed a complaint with the Rankin County Sheriff's Office. Following an investigation, Robb was arrested on December 8, 2016, and indicted in 2017 by a Rankin County grand jury for cyberstalking under Mississippi Code Annotated section 97-45-15(1)(c) (Rev. 2014). Robb was suspended from MSRB without pay, and he eventually resigned. McLaughlin later left her job at MSRB.

¶6.    On October 27, 2017, McLaughlin filed a complaint against Robb in the Rankin County Circuit Court, alleging the conduct and communications were "tortious" and claiming "negligence, recklessness, intentional torts, and/or gross negligence." McLaughlin averred that "it was reasonably foreseeable that [she] would suffer mental anguish and emotional distress as a result of [Robb]'s false, defamatory, and inflammatory posts and comments." McLaughlin filed a separate complaint against MSRB for negligence, negligent retention, negligent infliction of emotional distress, breach of contract, and gross negligence. McLaughlin reached a settlement with MSRB, and the case against MSRB was dismissed on January 15, 2021.

¶7.    The parties (McLaughlin and Robb) attended a pre-trial conference, and a pre-trial

---

[1] On this website, users could post and respond to personal classified advertisements.

3

order was entered on January 10, 2021.[2]  The pre-trial order limited the causes of action to be tried to negligence, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, defamation, and libel. The pre-trial order stated that "[Robb] obtained [McLaughlin]'s phone number and, on two consecutive Sundays, posted her phone number on a sexual solicitation website" as "established by the pleadings, by stipulation, by admission, or by agreement." The pre-trial order listed the contested issues of fact as "[t]he extent of [McLaughlin]'s mental anguish and non-economic damages and the extent of harassment she suffered[,] if any[,] as a result of receiving calls and texts[, t]he egregiousness of [Robb]'s conduct[, w]hether, and to what extent, punitive damages are warranted[, and w]hether [McLaughlin] incurred any monetary expenses as a result of the phone calls and texts[.]"

¶8.    A trial was held on March 2, 2021. The first witness McLaughlin called was Lee Harrell, who was general counsel for MSRB. During his testimony, business records showing previous workplace complaints against Robb and his probation history at MSRB were admitted into evidence.  Those exhibits had been disclosed at the pre-trial conference, and the exhibits were admitted into evidence over Robb's objections. Harrell provided evidence of a complaint concerning a previous workplace incident in which Robb allegedly told a female co-worker to "get her little ass up." Apparently, "she stood up and said he was behind her and he reached around in front of her and grabbed her right hand and squeezed it and pulled it over behind her head and held it there and squeezed it more." The jury also heard

---

[2] Robb was initially represented by counsel, but the attorney withdrew in 2018. Robb represented himself from that point forward.

4

testimony about another harassment complaint that had been filed against Robb in which he allegedly "threatened" a male co-worker and told him, "I'm going to f*ck you up."

¶9. McLaughlin testified next. She explained how Robb's harassment "profoundly affected" her and left her "scared . . . paranoid, deeply offended, humiliated, violated," as well as how Robb's "calculated, hateful actions continue haunting her today." McLaughlin testified that during the Thanksgiving holiday, she began receiving dozens of phone calls and text messages asking her for sex and calling her "a whore." She explained, "[I]t was really upsetting, you know, because I thought what in the hell is going on here, you know, where is all this coming from." McLaughlin then described the fear she felt:

> What I'm feeling right now again is the humiliation and the -- just trashy, like I was supposed to be some horrible whore, that any man could just think that I was available to do for them whatever they needed. It was scary. I was worried because I know that people can take your phone number and put it into a system and pay money to look up a phone number and find out an address. So I was scared. I lived alone. It was just me and my dog, you know. And it was just humiliating and an embarrassment that my name and my phone number was out there for anybody to come find me. That scared me more than anything.

McLaughlin also testified that Robb's alleged cyberstalking "impacted her professional life profoundly." McLaughlin left a "great job" giving up "great benefits" because of her fear that Robb knew where she worked, and that scared her. McLaughlin said she relocated to Florida to find work, "spent a lot of money on moving," and took a job with less pay and "no benefits whatsoever."

¶10. Robb then cross-examined McLaughlin. When asking about the number of calls received in response to the advertisement, Robb asked, "[Y]ou submitted some evidence

5

saying it was about 35 or so. Do you recall that? Does that sound fair?" McLaughlin replied, "Fair is a word I find hard to use looking at you." Robb then went through the content of each message McLaughlin received from unknown males in an effort to convince the jury that the messages were not vulgar and therefore did not warrant compensatory damages. He would read each message and then ask, "[I]s that vulgar? . . . So what is vulgar about text messages that you got?" Robb then focused on McLaughlin's medical history, asking, "You claim to have been stressed as a result of getting phone calls in November of 2016 from the advertisement. Do you have any evidence to offer as proof of the worry or stress?" Robb focused on the lack of medical evidence supporting McLaughlin's claims for damages.

¶11.    Robb tried to elicit testimony of McLaughlin's monetary debts to "show she has tons of outstanding debt and she just goes from place to place trying to get this debt paid. That's the source of her stress." After an on-the-record hearing, the judge allowed Robb to question McLaughlin about the debts but warned him, "I'm giving you rope, but you're hanging yourself. Okay? You're not doing yourself any favors. You need to get to the point." McLaughlin, in response to questioning about her debt, stated:

> It's not about the money. Because, yeah, I may have had judgments. I still have bills that I pay. I have bills I'm paying back creditors now for that were from one of those, but I'm paying them now monthly. So while I wasn't making a whole lot of money, I'm still trying to rebuild my life. But you, you took me away from my life here. You. Nobody else. Just you, Richard.

The jury was made aware of the existence of McLaughlin's lawsuit and settlement with MSRB during Robb's cross-examination of her. However, the jury was not informed of the amount of the settlement.

6

¶12. Robb also attempted to convey that he should not be held responsible for McLaughlin's relocation:

> Q:  You made claims for lost wages and that you had to move to find a job because of the hostile work environment at Mississippi State Rating Bureau. Why do you want this jury to have me pay for that?
>
> A:  Richard, it's because of you that my whole world turned upside down. If you would have never done what you did to me, I wouldn't be here today. I'd be at work at the Bureau.

¶13.  McLaughlin then called Robb as a witness. Robb admitted to posting the advertisements as a "harmless prank" and stated he did it because he "wanted her phone to ring." Robb testified that he posted a second advertisement because he felt like the first advertisement did not achieve his intended effect. Robb stated, "I wanted to make her phone ring, and I didn't hear any evidence of that," so he "decided to do it again." Robb admitted at trial he used his access to MSRB's computers without authorization to watch his co-workers.

¶14.  In closing, McLaughlin's counsel addressed damages. He explained, "[W]e have actual economic damages and we have non-economic damages. . . . They're both intended to compensate Ms. McLaughlin for the injuries she suffered." Counsel then recounted the damages:

> Regarding her actual economic damages, this is what you have in the record, if you'll recall. Recall Robb turned her world upside down. She fled to Florida. She paid about $375 in gas and hotel. She put items in storage for $2,782. She took a different job with a $3,500 a year salary differential for two years. She gave away about $5,000 of her belongings so she could exit and relocate. And she paid some– a couple hundred dollars to doctors in out-of-pocket expenses. Those economic damages total $15,000. There's evidence in the record for you to award her those for $15,000.

7

¶15.    In his closing, Robb argued, "She's wasted your time, the Court's resources, risked your exposure to COVID, and for what? Just to confront me?" On March 2, 2021, the jury found Robb liable for each claim. The jury awarded McLaughlin $285,750 ($275,000 for mental distress, $750 for phone services, and $10,000 in economic damages). Following the jury verdict, the trial judge held a hearing and ruled the case would not "go forward with punitive damages."

¶16.    Robb filed a motion for judgment notwithstanding the verdict or a new trial. The trial court denied the motion, and Robb filed a notice of appeal on June 18, 2021.[3]

**ANALYSIS**

**I.      Robb argues the trial court violated his rights to due process of law.**

      **A.      Robb claims he was never sued for the damages McLaughlin obtained at trial.**

¶17.    Robb argues he was "never sued for any claims or damages relating to or resulting from McLaughlin's decision to quit her job with MSRB and move to Florida in 2018," and McLaughlin's testimony concerning these expenses at trial caused him unfair prejudice. Robb argues a "due process violation" occurred because "service of process of the claims asserted and the claimed damages" is required under the law. We are not persuaded. McLaughlin's complaint stated she was demanding judgment for "all of the injuries, pain and

---

[3] This appeal was delayed when Robb filed a notice of bankruptcy on November 16, 2022. This Court stayed the appeal on January 4, 2023, as a result of the automatic stay under federal law. On July 24, 2023, Robb filed a motion to lift the automatic stay, specifically requesting that this appeal be allowed to proceed. McLaughlin did not oppose the requested relief from the automatic stay. The bankruptcy court entered an order on July 25, 2023, lifting the stay on the pending appeal.

suffering, disabilities, liabilities, expenses, and other losses and damages." The complaint stated McLaughlin was seeking "all other economic damages allowed by law."

¶18.　As stated previously, the parties attended a pre-trial conference. The pre-trial order stated, "Consequently, the situation at MSRB became untenable and Ms. McLaughlin . . . reluctantly left behind her daughter, son-in-law, and granddaughter to relocate to Florida, where she could find work." Exhibit 9 (an itemized list of expenses) was disclosed at the pre-trial conference. Robb objected to the relevance of the expenses, claiming McLaughlin "has shown no causal connection to her claimed move from Florida nearly two years after [he] resigned from MSRB and had not worked with [her] for that time period." Exhibit 9 was never admitted into evidence at trial, but testimony as to those alleged damages did occur.

¶19.　In *Rogers v. Rausa*, 871 So. 2d 748, 751 (¶10) (Miss. Ct. App. 2003), this Court examined whether a defendant was on fair notice of damages the plaintiff sought. Rausa filed a complaint against Rogers for injuries sustained in a vehicle collision. *Id*. at (¶1). The jury returned a verdict in favor of Rausa for $100,000. *Id*. Rogers complained that he was not on notice that Rausa was claiming future medical costs until "mid-day on the Friday before trial." *Id.* at (¶9). This Court explained:

> The standard of review regarding the admission or exclusion of evidence is abuse of discretion. *Yoste v. Wal-Mart Stores*, Inc., 822 So.2d 935, 936 (¶7) (Miss. 2002). In the case of *Peterson v. Ladner*, the plaintiff designated a medical expert to testify that the plaintiff suffered from a permanent injury which would render him unable to return to his previous occupation. *Peterson v. Ladner*, 785 So. 2d 290, 295 (¶18) (Miss. Ct. App. 2000). In that case, we discussed whether or not the plaintiff put the defendant on fair notice of the disputed testimony of the physician and held that **where there is no inconsistent testimony and as long as the defendant has notice of the subject matter, then fair notice was given**. *Id.* at (¶24).

9

871 So. 2d at 751 (¶10) (emphasis added). This Court held that from the facts in evidence, "Rogers should have been aware that the subject of future medicals would be an issue throughout this litigation." *Id.* at (¶14).

¶20. Concerning recoverable damages as a result of another person's actions "[a] defendant's negligence which is found to be the cause in fact of a plaintiff's damage will also be the legal cause of that damage, provided the damage is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act." *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (¶33) (Miss. 2007). "In order for an act of negligence to proximately cause the damage, the fact finder must find that the negligence was both the cause in fact and legal cause of the damage." *Id.*

¶21. In this case, Robb was on notice of the subject matter of the trial, and he had notice that McLaughlin would be pursuing "all damages allowed by law." The very expense report, listing all McLaughlin's expenses relating to her relocation, Robb complains he was not aware of was disclosed during the pre-trial conference, and Robb actually entered an objection to its relevance. It is hard to imagine a litigant not knowing the particular contents of a document when it was marked as an exhibit at a pre-trial conference they attended, discussed at the pre-trial conference, and subject to his own objection. Robb knew that McLaughlin would be pursuing all damages proximately caused by his intentional act of placing the advertisements while knowing those advertisements were false. Robb should have known from the subject matter of the pre-trial conference and the trial that McLaughlin

10

would be seeking expenses for her relocation. The damages were foreseeable, and Robb should have anticipated the dangers his actions created for others. *See Davis v. Christian Broth. Homes of Jackson, Mississippi, Inc.*, 957 So. 3d 390, 405 (¶33) (Miss. Ct. App. 2007) ("Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence.") (quoting *Ogburn v. City of Wiggins*, 919 So. 2d 85, 91(¶21) (Miss. Ct. App. 2005)). The jury, as the finder of fact, found that he was both the cause in fact and legal cause of McLaughlin's injury. Robb was on notice of the subject matter of the trial and the damages being sought, and Robb presented no testimony or evidence to contradict the damages asserted by McLaughlin. This issue is without merit.

**B.** **Robb argues his right to due process was violated when McLaughlin failed to disclose lost wages in discovery and was permitted to seek lost-wages damages she disavowed under oath in discovery.**

¶22. Robb argues the trial court erred by permitting McLaughlin to testify concerning her lost wages. During her deposition, McLaughlin stated that she was not seeking damages for her lost wages. Robb states that "once McLaughlin made this statement under oath, no other discovery was conducted on this issue." Robb argues the trial court erred because "McLaughlin was permitted to testify at trial to an alleged wage decrease."

¶23. McLaughlin responds that "the jury heard McLaughlin's testimony, heard nothing from Robb to refute or impeach her testimony, and it credited her testimony." Further, McLaughlin points out Robb "elicited the very evidence he claims should have been excluded." Finally, McLaughlin argues that since Robb did not object at trial, he is

11

procedurally barred from raising this issue on appeal.[4]

¶24. In her complaint, McLaughlin alleged Robb was liable for "lost wages and/or loss of wage earning capacity." Further, McLaughlin summarized her damages as those "for past, present, and future medical expenses; past present and future physical pain and suffering; past, present, and future mental anguish and emotional distress; lost wages and/or loss of wage earning capacity; damage to her personal and business reputation."

¶25. During pre-trial discovery, Robb took McLaughlin's deposition. In that deposition, the following exchange took place:

Q:    Okay. You're not making a lost wage claim in this lawsuit. Correct?

A:    No. I mean, yes, that's correct, I'm not making one. I guess that's what I should have said.

Before trial, Robb filed a motion in limine to exclude any testimony of lost wages, citing the answers McLaughlin gave in the deposition. In opposition to the motion in limine, McLaughlin argued lost wages were expressly claimed in the complaint and "Robb's motion, and the testimony he cites in support of his motion (which is confusing at least), cannot be the basis for excluding this category of damages."

¶26. Robb explained at the pre-trial conference, "[I]n her original deposition, she stated she was not making a claim for lost wages, so the subpoena was whittled down to not include that. But now that she's making a claim for lost wages, how do I go about getting those? Do I need to issue a new subpoena or do I need to have something to enforce the original

---

[4] The issue was raised in Robb's motion for a JNOV and, therefore, was preserved for appeal. *See White v. Stewman*, 932 So. 2d 27, 31-32 (¶9) (Miss. 2006).

subpoena?" McLaughlin's attorney replied, "I don't know when the original subpoena was issued. Why it was whittled down—her complaint says in at least two places she's making a claim for lost wages. It expressly states that." During the pre-trial conference, the trial court denied the motion in limine and explained:

> I don't know why the subpoena was whittled down, Mr. Robb. I mean, discovery is closed. So that's—and it is in her complaint that she's claiming lost wages. So, I mean, I don't know why your attorney did that. I can't answer that . . . . It's in the complaint. It's in the complaint. I mean, it's a notice pleading in the state of Mississippi. All they have to do is reference it in the complaint.

Further, the trial court instructed Robb that he was free to cross-examine McLaughlin on the issue.

> And you're going to get to cross-examine Ms. McLaughlin. You're going to stand up and say, Well, Ms. McLaughlin, on this date, didn't you say you weren't claiming lost wages?[5]

¶27.   During trial, in response to her counsel's question, McLaughlin stated she was making $3,500 less per year at her new job than she was making at MSRB.  Robb did not object to this testimony. While Robb was cross-examining McLaughlin he asked her, "[W]hy do you want money?" to which McLaughlin responded, "I want restitution for the fact that I lost wages, that I had to give up a great job, that I had to move, that I had to start all over again, and for what you did to me." Robb did not object and stated he had no further questions. In closing arguments, McLaughlin's counsel, without objection from Robb, repeated the fact that McLaughlin had taken a job making $3,500 less per year after leaving MSRB.

¶28.   On appeal, Robb argues this was a discovery violation and cites *State Highway*

---

[5] A written order denying the motion in limine was filed on February 9, 2021.

*Commission of Mississippi v. Jones*, 649 So. 2d 201 (Miss. 1995). *Jones* was a condemnation case in which the Highway Commission, during discovery, specifically requested the production and inspection of photographs of the land at issue. *Id.* at 203. The Joneses failed to produce the photographs during discovery but then admitted the photographs into evidence at trial. The jury found for the Joneses. *Id*. at 202. On appeal, the Mississippi Supreme Court reversed and remanded the case explaining, "There is no room for judicial discretion in this case. The Joneses failed to produce the photographs in response to a specific request for production and an order compelling discovery." *Id*. at 204.

¶29.   *Jones* is not applicable to the issue at hand. Here, it was clear from the complaint and demand for a jury trial that McLaughlin was seeking lost wages. Unlike *Jones*, Robb decided not to request any further information during discovery. When Robb filed his motion in limine to exclude lost-wage testimony, McLaughlin clearly indicated in response that lost wages had always been claimed and indicated again the amount claimed. At the pre-trial conference, Robb claimed, "Well, the claim for the lost wages wasn't made until well after this case was combined with the rating bureau." The court responded that Robb had notice of the lost wages claim from the complaint, stating, "It's in the complaint. I mean, it's a notice pleading in the state of Mississippi. All they have to do is reference it in the complaint."

¶30.   "In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion." *Smith v. State*, 297 So. 3d 1139, 1141 (¶12) (Miss. Ct. App. 2020) (citing *Montgomery v. State*, 891 So. 2d 179, 182

14

(¶6) (Miss. 2004)). Here, the trial court did not abuse its discretion by denying the motion in limine and permitting McLaughlin to proceed with her claim for lost wages.

### C. Robb claims a due process violation occurred because, based on the complaint, he was not on notice that McLaughlin was pursuing a defamation claim.

¶31. Robb argues he had no notice of McLaughlin's defamation claim against him. Robb states "neither the words 'defamation' nor 'libel' appear anywhere in the complaint." However, the complaint clearly states that Robb made "false, defamatory, and inflammatory posts and comments." Robb argues that although Mississippi is a notice pleading state, this language was insufficient to put him on notice of a defamation claim, arguing "the notion that use of one word can provide the mandatory notices stretches the bounds of notice pleading too far."

¶32. "Mississippi is a notice-pleadings state; fact pleadings are not required." *White v. Jernigan Copeland Attorneys PLLC*, 346 So. 3d 887, 898 (¶25) (Miss. 2022) (citing *City of Meridian v. $104,960.00 U.S. Currency*, 231 So. 3d 972, 974 (¶9) (Miss. 2017)). The Mississippi Supreme Court explained:

> [U]nder our rules, [the plaintiff] is not required to plead the specific wrongful conduct. At the pleading stage, he is required only to place [the defendant] on reasonable notice of the claims against it and to demonstrate that he has alleged a recognized cause of action upon which, under some set of facts, he might prevail.

*City of Meridian*, 231 So. 3d at 974-75 (¶9).

¶33. The Mississippi Rules of Civil Procedure mandates notice pleadings. Rule 8(a) states:

> A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain:

15

> (1) **a short and plain statement of the claim** showing that the pleader is entitled to relief, and
> (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

(Emphasis added).

¶34.	Further, the pre-trial order specifically listed the causes that were to be tried as follows:

> The following claims . . . have been filed and will be presented to the jury:
>
> Intentional Infliction of Emotional Distress
> Negligent Infliction of Emotional Distress
> Invasion of Privacy
> **Defamation/Libel**
> Negligence/ Gross Negligence

(Emphasis added). The pre-trial order stated that "[t]he pleadings are amended to conform to this pre-trial order." Robb never contested defamation as one of the issues to be tried, which was clearly set forth in the pre-trial order.

¶35.	Robb's argument is an attempt to create a legal fiction just like the fake advertisement he intentionally created. Robb was sued "for damages . . . arising from [his] unauthorized use and dissemination of [McLaughlin]'s personal information which Robb placed on the internet and/or other public venues through advertisements purporting to offer adult sexual services and/or 'escort' services." Robb admitted to creating false prostitution advertisements as retaliation against his co-worker. The complaint stated that Robb made "**false, defamatory**, and inflammatory posts and comments." (Emphasis added). The complaint also stated, "It was reasonably foreseeable that [McLaughlin] would suffer mental anguish and

16

emotional distress as a result of [Robb's] **false, defamatory**, and inflammatory posts and comments." (Emphasis added). Finally, the pre-trial order specifically used the word "defamation" as one of the issues to be presented to the jury. Robb's claim that he had no notice that he was being sued for the legal grievance of defamation is beyond understanding. Due to the clear language in the complaint and the pre-trial order, Robb was placed on fair notice of the claim for defamation.

### D. Robb claims McLaughlin was permitted to recover for a non-existent cause of action.

¶36.    Robb argues "the jury was allowed to consider, and did find Robb liable for, a claim of gross negligence." Robb explains that "gross negligence is not an independent cause of action for which compensatory damages may be awarded." Robb argues the jury believed gross negligence was an independent cause of action "because that is the way the Plaintiff's jury instruction presented it."

¶37.    As previously discussed, the complaint averred, and the pre-trial order confirmed, that "negligence/gross negligence" were claims to be presented to the jury. Jury Instruction 8, given without objection from Robb, stated:

> Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like or similar circumstances. Negligence may consist either of doing something that a reasonably careful person would not do under like or similar circumstances, or in failing to do something that a reasonably careful person would do under like or similar circumstances. Gross negligence is that course of conduct, which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them.

It is clear from the verdict form that the jury considered both negligence and gross negligence

17

and found Robb liable for both.

¶38.    The Mississippi Supreme Court has repeatedly held that "when a jury instruction is offered at trial, it is the duty of the opposing party, in order to preserve this point for appeal, to state a contemporaneous objection in specific terms so that the trial court has an opportunity to correct any mistake." *Solanki v. Ervin*, 21 So. 3d 552, 561 (¶21) (Miss. 2009) (quoting *Young v. Robinson*, 538 So. 2d 781, 783 (Miss. 1989)). Therefore, "on appeal a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial." *Id.* (quoting *Young*, 538 So. 2d at 783). Moreover, "[w]hile certain issues are required to be raised in a motion for new trial, raising objections there which should have been made at trial has never been thought to cure the failure to object at the proper time." *Barnett v. State*, 725 So. 2d 797, 801 (¶22) (Miss. 1998).

¶39.    In the present case, McLaughlin pursued claims for gross negligence (hoping to be awarded punitive damages) and, in the alternative, negligence.[6] It was clear from the pre-trial order that both claims would be presented to the jury. Robb failed to object at the pre-trial conference and did not object at trial when Jury Instruction 8 was discussed and ultimately given. Further, Robb did not object to Jury Instruction 15 (the jury verdict form) listing negligence and gross negligence as separate claims to be considered. *See Nunnally v. R.J. Reynolds Tobacco Co.*, 869 So. 2d 373, 378 (¶6) (Miss. 2004) (stating that a party who fails to make a contemporaneous objection to a jury instruction at trial waives the issue on appeal)

---

[6] "[T]he threshold for submitting the question of gross negligence to the jury is higher than the threshold for submitting the question of simple negligence." *McDonald v. Lemon-Mohler Ins. Agency*, 183 So. 3d 118, 126 (¶24) (Miss. Ct. App. 2015).

18

(citing *Haggerty v. Foster*, 838 So. 2d 948, 954 (Miss. 2002)). Robb, therefore, cannot complain about the jury instructions on appeal. This issue is barred.

## II. Robb argues the trial court erred in permitting McLaughlin to pursue multiple claims against multiple defendants.

¶40.    Robb argues McLaughlin has "double dipped" on her damages by being permitted to proceed against both him and MSRB. In his motion for a new trial, Robb explained:

> As noted, these damages were charged to an entirely different defendant in separate litigation. Plaintiff settled with that defendant. Whatever amount Plaintiff collected, if any, should have been disclosed to the jury inasmuch as Plaintiff was claiming the very same damages against Mr. Robb.

¶41.    Robb's argument is without merit. He was liable for the amount of damages allocated by the jury. Under Mississippi law, when fault has been "apportioned between settling and non-settling defendants, then, notwithstanding the settlement, the non-settling defendant remains liable for the amount of damages allocated to him in direct proportion to his percentage of fault." *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999) (citing Miss. Code Ann. § 85-5-7 (Supp. 1989)).

> Except as otherwise provided in subsection (4) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a **joint tortfeasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault**. In assessing percentages of fault an employer and the employer's employee or a principal and the principal's agent shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or omission of the employee or agent.

Miss. Code Ann. § 85-5-7(2) (Rev. 2011) (emphasis added).

¶42.    In the present case, the agreed order dismissing the claims against MSRB stated,

19

"McLaughlin and the Mississippi State Rating Bureau further advise this joint motion has no effect on the claims or causes of action asserted by Plaintiff against Defendant Richard Robb and the case against Richard Robb shall remain on the docket as to that party and shall proceed accordingly."[7]

¶43. Importantly, the jury instructions informed the jury it could allocate fault to a nonparty. The jury instructions stated, "If you have determined, under other instructions given to you, that there was some other participant in the event which caused the plaintiff's damages, and that participant is not a party to this lawsuit, you may nonetheless determine or fix a percentage of fault to be allocated to that nonparty participant." The jury was informed of the settlement with MSRB during McLaughlin's testimony. The jury was properly instructed under Mississippi law and found MSRB at no fault and allocated no damages to MSRB. The jury was instructed to "determine or fix the percentage of fault to be allocated to Richard Robb" and fixed it at "100%." Robb is not entitled to any credit from the settlement between McLaughlin and MSRB.

¶44. Based on the case law Robb cites, it seems he also contends res judicata bars McLaughlin from pursuing claims against MSRB and Robb for the same underlying conduct. If so, Robb is wrong. McLaughlin had every right to pursue claims against anyone responsible for the damages caused to her by Robb's actions. A plaintiff "is afforded the option of attaching multiple legal theories to an individual claim, of attaching multiple claims

_____

[7] It is important to note that the apportionment instruction and allocation made by the jury are only relevant to McLaughlin's claims for negligence and negligent infliction of emotional distress. *See* Miss. Code Ann. § 85-5-7(1); *Dawson v. Townsend & Sons Inc.*, 735 So. 2d 1131, 1142 (¶4) (Miss. Ct. App. 1999).

to an individual suit and, ultimately, of attaching the suit to several defendants." *Harrison v. Chandler-Sampson Ins. Inc.*, 891 So. 2d 224, 236 (¶36) (Miss. 2005). Robb and MSRB were both sued in separate lawsuits, and MSRB settled, resulting in that civil action being dismissed. That settlement does not act as a bar to McLaughlin's pursuit of her claims for Robb's tortious conduct. Robb's liability for his conduct was never previously litigated and was, for the first time, resolved when the jury returned its verdict. This argument is without merit.

### III.    Robb argues the damages award was wholly speculative.

¶45.    Robb argues the economic damages award was "wholly speculative and must be reversed."[8] Robb claims, "McLaughlin failed to meet the requirements of proving her damages with specificity and admissible evidence." Robb takes issue with the fact that at trial, the only evidence submitted to show economic damages was the testimony of McLaughlin herself.[9] The assessment of damages is a finding of fact, and the appellate court

---

[8] It appears Robb is not challenging the emotional-distress damages of $275,000. While he complains of "damages" being speculative in his brief, the only arguments he makes concern whether the economic damages of $10,000 were supported by evidence. Robb cites no authority or provides any argument as to how the emotional distress damages were speculative. Mississippi Rule of Appellate Procedure 28(a)(7) governs the argument section of appellate briefs. The rule "does not simply require a party to mention authority; the authority must be used to develop the argument in a meaningful way." *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016). This Court, therefore, will not consider the validity of the emotional distress damages.

[9] Robb also states that McLaughlin's letter to her attorney articulating her damages caused by Robb's conduct was introduced at trial as Exhibit P-9. Exhibit P-9 was marked as a potential trial exhibit at the pre-trial conference and included in the record on appeal. The record does not indicate, though, whether the exhibit was ever admitted into evidence at trial. McLaughlin did, however, testify as to the damages listed in Exhibit P-9.

reviews an award of damages under the clearly erroneous standard. *Texaco Inc. v. Addison*, 613 So. 2d 1193, 1202 (Miss. 1993) (quoting *Johnson v. Offshore Express Inc.*, 845 F.2d 1347, 1356 (5th Cir. 1988)). Damage awards are only overturned when the trial judge has abused his discretion or "in exceptional cases where such awards are so gross as to be contrary to right reason." *Johnson*, 845 F.2d at 1356 (citing *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988); *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 331 (5th Cir. 1987)).

¶46.    Jury Instruction 1 explained to the jury, "[Y]our verdict should be based on the evidence and not be open to speculation, guesswork, or conjecture." Jury Instruction 11 explained:

> Actual economic damages means objectively verifiable pecuniary damages arising from medical expenses and medical care, rehabilitation services, loss of earning and earning capacity, loss of income, loss of use of property, costs of repair or replacement property, cost of obtaining substitute domestic services, loss of employment, loss of business or employment opportunities, and other objectively verifiable monetary losses.

¶47.    "The jury's verdict in a civil case is a finding of fact. . . . Thus, even if we do not agree to the amount awarded in the verdict, we are not allowed to supplant our judgment for that of the jury unless we conclude that there was insufficient evidence to support the award of damages or that the verdict was a product of bias, passion, or prejudice." *Sharp v. Odom*, 743 So. 2d 425, 431 (¶11) (Miss. Ct. App. 1999) (citing *Edwards v. Ellis*, 478 So. 2d 282, 289 (Miss. 1985)). This Court will not interfere with a jury's award of damages unless there is insufficient proof to support the award. *Parsons v. Walters*, 297 So. 3d 250, 257 (¶21) (Miss. 2020) (citing *Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 776 (¶31)

22

(Miss. 2004)).[10]

¶48.    "It is the jury who determines the weight of the testimony and the credibility of the witnesses at trial and it is the primary province of the jury to determine the amount of damages to award." *Colville v. Davidson*, 934 So. 2d 1028, 1032 (¶14) (Miss. Ct. App. 2006) (citing *Burge v. Spiers*, 856 So. 2d 577, 579 (¶9) (Miss. Ct. App. 2003)). "Awards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." *Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 945 (Miss. 1992).

¶49.    Here, McLaughlin presented her uncontradicted testimony as evidence of her damages. The jury heard and relied on McLaughlin's testimony. McLaughlin testified:

> I had to give up all of those things that the Bureau took care of for me. And then I had to move with my dog. And I couldn't take everything with me, so I had to put it in storage, which it's still in storage here. So I'm paying for that every month. And I had to move to Florida, and I had to drive there, spend the night driving down, and then get down to find a place to go rent and find a job.

Further, McLaughlin stated, "Well, gas and hotel was around $250, $275. And then I also had to put, like I said, my stuff in storage here, that's still in storage here. And at the time, it was close to $3,000." McLaughlin also testified that due to the move she had to give away,

---

[10] *See Hankins Lumber Co. v. Moore*, 774 So. 2d 459, 466-67 (¶20) (Miss. Ct. App. 2000) (holding that although Moore incurred less than $9,000 in actual damages, the jury award of $80,000 was not excessive); *Woods v. Nichols*, 416 So. 2d 659, 672 (Miss. 1982) (holding that an award of $550,000, 10.4 times the actual damages, was not so excessive as to evince passion, bias, and prejudice on the part of the jury); *McNeil v. Bourn*, 721 So. 2d 663, 671 (¶30) (Miss. Ct. App. 1998) (holding a judgment of $121,000, 5.4 times the submitted medical bills, was not excessive).

"Half of my place. Probably close to another $5,000 of just my furniture and my washer and drier, you know, kitchen stuff, bedroom stuff. One bedroom." Further, McLaughlin testified about increased out of pocket costs due to her leaving her job: "I lost my medical, my dental, my vision, my retirement, and the possibilities of being able to have the full 15-year medical at the time I would have reached that."

¶50.    Robb had the opportunity to cross-examine McLaughlin as to these damages and question her about them in front of the jury. Further, Robb could have called his own witnesses to testify and refute McLaughlin's damages, which he failed to do. Here, the jury heard McLaughlin's testimony as to the economic damages she incurred as a result of Robb's actions. The jury awarded $10,000 in economic damages based on testimony that McLaughlin incurred the following expenses: gas and hotels of $275, storage of personal items of $3,000, and replacement of items during her move of $5,000, as well as lost wages of $3,500 a year for two years. The *jury* weighs McLaughlin's credibility, not this Court. The jury determined the amount of damages proximately caused by Robb's conduct, and this Court declines to supplant our judgment for that of the jury. The verdict of economic damages was supported by the evidence in this case. *See Sharp v. Odom*, 743 So. 2d 425, 431 (¶11) (Miss. Ct. App. 1999). There is absolutely no evidence of bias, prejudice, or passion in such an award.

**IV.    Robb argues the trial court erred by failing to bifurcate the proceedings.**

¶51.    Robb argues the trial court erred by not following "mandatory bifurcation procedures." Robb argues his bad character was presented to the jury via McLaughlin's first

24

witness, Lee Harrell, general counsel for MSRB, when that evidence should have been reserved for a punitive damages hearing. In his motion for a JNOV, Robb argued the relevance of this evidence, stating, "[E]vidence was allowed which was not only wholly unrelated to Mr. Robb's conduct with regard to placing the advertisement but which was wholly unrelated to [McLaughlin] in any fashion."

¶52.    At the pre-trial conference, the exhibits Robb alleges contained improper character evidence were marked for identification. Robb objected to each of them on the grounds of relevancy and hearsay in the pre-trial order. At trial, these exhibits (P1-5) were admitted during Lee Harrell's testimony without objection from Robb. When asked if he had any objection, to each one Robb stated, "[N]o objection to a business record."

¶53.    It is well established law that objections to evidence must be contemporaneous. "Counsel must object contemporaneously to inadmissible evidence in order to preserve the error for appeal." *Boyd v. State*, 977 So. 2d 329, 337 (¶33) (Miss. 2008). "If no contemporaneous objection is made, the error, if any, is waived." *Ronk v. State*, 172 So. 3d 1112, 1134 (¶51) (Miss. 2015). "The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal." *Smith v. State*, 724 So. 2d 280, 319 (¶42) (Miss. 1998). Robb did not object to this evidence at trial and cannot raise the issue on appeal.

¶54.    As to the issue of bifurcation, the trial judge made it clear from the beginning of trial that the trial would be bifurcated, and should the jury find for the plaintiff, an evidentiary

hearing would be held.[11] The trial judge refused jury instructions concerning punitive damages, stating, "The jury has to find for the Plaintiff before we even get into punitive damages." After the jury returned a verdict in favor of McLaughlin and granted compensatory damages, she argued in favor of continuing to a bifurcated trial for punitive damages, citing *Mississippi Power & Light Co. v. Cook*, 832 So. 2d 474, 487-88 (¶43) (Miss. 2002). The trial court held, "[T]he [c]ourt's not going to go forward with punitive damages in this case." The trial court followed the correct procedure for punitive damages under Mississippi Code Annotated section 11-1-65(1). The trial court did not abuse its discretion by holding the issue of punitive damages would not be submitted to the jury.

### V. Robb claims McLaughlin was improperly permitted to provide

---

[11] Mississippi Code Annotated section 11-1-65(1) (Rev. 2014) describes the detailed evidentiary process by which a judge obtains the procedural impetus to make a judgment as a matter of law in regard to punitive damages:

> In any action in which punitive damages are sought:
> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
> (b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
> (c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered.
> (d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.
> . . . .

**expert medical testimony.**

¶55. Robb argues the trial court erred by permitting "McLaughlin, a layperson, with no advanced medical education, training, or licensure, was wholly unqualified and legally incompetent to offer medical causation opinions, i.e. that the stress caused by Robb caused her to have medical issues . . . ." Robb argues that "it is well established law that a lay person may not provide testimony that requires specialized or advanced training or skill." "In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion." *Smith v. State*, 297 So. 3d 1139, 1141 (¶12) (Miss. Ct. App. 2020) (quoting *Montgomery v. State*, 891 So. 2d 179, 182 (¶6) (Miss. 2004)).

¶56. At trial, the medical causation testimony presented by McLaughlin was elicited in part by Robb himself when cross-examining McLaughlin at trial. Robb asked the following questions: "I believe, in a deposition, you made a claim to have Hashimoto's disease. Is that correct? . . . What is that?" and "How did these phone calls cause these disorders in your body?" McLaughlin replied, "Anything that deals with heavy stress can bring on what I'm dealing with currently." Robb continued, "You claim to have been stressed as a result of getting phone calls in November of 2016 from the ad. . . . Do you have any evidence to offer as proof of the worry or stress? Do you have any psychologist's notes? Do you have any friends who could testify that you talked to them about being worried or stressed?" McLaughlin replied, "Sure, I've talked to my family." Robb then asked, "Are any of them here to testify today?" McLaughlin replied, "No."

27

¶57.    McLaughlin was not required to prove a physical injury to recover for her claim of intentional infliction of emotional distress. Robb is mistaken in his contention that McLaughlin was required to present expert testimony concerning her injuries for intentional infliction of emotional distress. The Mississippi Supreme Court has held:

> Under Mississippi law, a plaintiff may recover under a theory of intentional infliction of emotional distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . **even though there has been no physical injury.** In such instances, it is the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress . . . ." *Bowden v. Young*, 120 So. 3d 971, 980 (¶25) (Miss. 2013) (emphasis added) (citing *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981), *overruled on other grounds by Adams v. U.S. Homecrafters Inc.*, 744 So. 2d 736 (Miss. 1999)).

(Emphasis added).  The jury heard the mental and emotional effects Robb's actions had on McLaughlin.  She testified extensively as to the stress and fear it caused her and how she had to leave a job with benefits, move to another state and take a job with less pay and less benefits.  She even explained, "I'm still trying to rebuild my life. But you, you took me away from my life here."

¶58.    Further, under the invited-error doctrine, Robb cannot complain on appeal about such testimony because he invited McLaughlin to testify about her medical history and conditions. "It is axiomatic that a defendant cannot complain on appeal of alleged errors invited or induced by himself." *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018); *see also Galloway v. State*, 122 So. 3d 614, 645 (¶87) (Miss. 2013); *O'Connor v. State*, 120 So. 3d 390, 397 (¶17) (Miss. 2013). The trial court did not abuse its discretion in allowing McLaughlin to answer questions Robb asked about her medical history.

28

**VI.** **Robb claims the trial court gave jury instructions that misstated the law and were not supported by the evidence.**

¶59. "This Court reviews jury instructions under an abuse-of-discretion standard." *Roby v. State*, 183 So. 3d 857, 872 (¶63) (Miss. 2016). "Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found." *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 660 (Miss. 1985). The jury's verdict in a civil case is a finding of fact. *Edwards*, 478 So. 2d at 289.

### A. Jury Instruction 6

¶60. On appeal, Robb argues Jury Instruction 6, the invasion-of-privacy instruction, was defective on its face and did not list the crucial elements of the tort. Jury Instruction 6 read as follows:

> If you find from a preponderance of the evidence in this case that:
> 1. Richard Robb intentionally intruded upon the solitude or seclusion of Denise McLaughlin by obtaining her cell phone number and publishing it on a sexual solicitation website; or
> 2. Richard Robb appropriated Denise McLaughlin's identity for an unpermitted use[]; or
> 3. Richard Robb publicly disclosed private facts about Denise McLaughlin; or
> 4. Richard Robb held Denise McLaughlin out to the public eye in a false light;
> Then your verdict shall be for the Plaintiff, Denise McLaughlin.

¶61. At trial, Robb moved for a directed verdict on the claim of invasion of privacy by false light, arguing McLaughlin's "cell phone number is not private." The trial court denied his motion. During the jury instruction conference, Robb incorporated his objections from his

directed-verdict argument. In his motion for a new trial, Robb again objected to the invasion-of-privacy claim arguing it did not accurately reflect the law.

¶62.    Under Mississippi law, four theories are recognized for the tort of invasion of privacy: "(1) the intentional intrusion upon the solitude or seclusion of another; (2) the appropriation of another's identity for an unpermitted use, (3) the public disclosure of private facts, and (4) holding another to the public eye in a false light." *Brasel v. Hair Co.*, 976 So. 2d 390, 392 (¶7) (Miss. Ct. App. 2008). "It is thus not one tort but a complex of four." *McCorkle v. McCorkle*, 811 So. 2d 258, 268 (¶25) (Miss. Ct. App. 2001).

¶63.    "This Court reviews the giving or refusal of jury instructions for an abuse of discretion." *Fairley Constr. Servs. Inc. v. Savage*, 265 So. 3d 203, 213 (¶41) (Miss. Ct. App. 2019) (quoting *Magers v. Diamondhead Resort LLC*, 224 So.3d 106, 109 (¶6) (Miss. Ct. App. 2016)). "When jury instructions are challenged on appeal, we do not review them in isolation: rather, we read them as a whole to determine if the jury was properly instructed." *Id*. at 110 (¶6) (internal quotation marks omitted). "If the jury instructions, read as a whole, fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.*

¶64.    In this case, Robb argued that he did not publicly disclose a private fact because McLaughlin's phone number was not private. Robb did not mention the other three invasion-of-privacy torts in his objection. The instruction accurately stated the law and the four underlying torts within invasion of privacy. Robb admitted to posting McLaughlin's phone number along with the name Denisa, which is one letter away from her name, advertising her

as a prostitute. The trial court did not abuse its discretion by overruling Robb's objection to the invasion-of-privacy jury instruction.

### B. Jury Instructions 7 and 8

¶65. On appeal, Robb argues that Jury Instructions 7 and 8 were improper. First, he contends that Jury Instruction 7, the defamation instruction, was "legally deficient." He also argues that Jury Instruction 8's mention of gross negligence was "a violation of the absolute rule of bifurcation." However, Robb failed to object to either of these instructions when given the opportunity at trial.

¶66. It is clear under Mississippi law that any objection to jury instructions must be contemporaneously made at trial. *See Solanki v. Ervin*, 21 So. 3d 552, 561 (¶21) (Miss. 2009). Our Supreme Court has held that "when a jury instruction is offered at trial, it is the duty of the opposing party, in order to preserve this point for appeal, to state a **contemporaneous objection** in specific terms so that the trial court has an opportunity to correct any mistake." *Id.* (emphasis added) (quoting *Young*, 538 So. 2d at 783). Therefore, "on appeal a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial." *Id.* (quoting *Young*, 538 So. 2d at 783). With regard to Robb's alleged error for these two instructions, no objection was raised at trial, and he is barred from raising this issue on appeal.

### C. Jury Instruction 15

¶67. Lastly, Robb argues on appeal that Jury Instruction 15, the form of the jury verdict, was improper. However, he failed to object to this instruction at the jury instruction

31

conference. Robb only argued this jury instruction was improper in his motion for a JNOV, where he contended that McLaughlin's complaint never asserted claims for defamation or libel.

¶68. As for this objection contained within the motion for a JNOV, we examined this issue in *Byrd v. Stubbs*, 190 So. 3d 26, 33-34 (¶21) (Miss. Ct. App. 2016), where Byrd failed to object to the jury instructions at trial but raised the objection for the first time in her motion for a new trial:

> "On appeal a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial." *Id.* (quoting *Young*, 538 So. 2d at 783) (alteration omitted). "**Moreover, [w]hile certain issues are required to be raised in a motion for new trial, raising objections there which should have been made at trial has never been thought to cure the failure to object at the proper time**." *Barnett v. State*, 725 So. 2d 797, 801 (¶22) (Miss. 1998) (emphasis in original); accord *Hughes v. State*, 90 So. 3d 613, 623-24 (¶25-26) (Miss. 2012); *Smith v. State*, 797 So. 2d 854, 856 (¶7) (Miss. 2001). "**Objections to jury instructions made after the jury has returned a verdict and been discharged [are] simply too late.**" *Barnett*, 725 So. 2d at 801 (¶22). Because Byrd did not object at trial to jury instruction as an incorrect statement of the law, that argument is waived on appeal.

(Emphasis added). Therefore, Robb's objection to this jury instruction in his motion for a JNOV is simply inadequate to preserve this argument on appeal. This argument has been waived.

### VII. Robb argues there was cumulative error.

¶69. Finally, Robb argues that the verdict should be reversed under the cumulative error doctrine. "The cumulative-error doctrine states that multiple errors, which alone may not require reversal, may constitute reversible error if the cumulative effect of the errors resulted

in an unfair trial." *Est. of Sumrall v. Singing River Health Sys.*, 303 So. 3d 798, 814 (¶50) (Miss. Ct. App. 2020) (quoting *Lacoste v. Lacoste*, 197 So. 3d 897, 913 (¶58) (Miss. Ct. App. 2016)). But, as its name suggests, the cumulative error doctrine requires error, which is absent in this case. Because we find no individual errors, there can be no cumulative error.

## CONCLUSION

¶70. We find Robb's due process rights were not violated, the trial court properly bifurcated the proceedings, and McLaughlin was not required to produce expert medical testimony. McLaughlin was permitted by law to pursue multiple claims against Robb and MSRB following Robb's conduct. The damages were not speculative, and the jury instructions were appropriate. Accordingly, we affirm the final judgment and the trial court's order denying Robb's motion for a JNOV or new trial.

¶71. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**